# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS,

## MARCH TERM, 1882.

Mary E. Taaffe, Respondent, *v.* Charles Slevin, Appellant.

### March 7, 1882.

1. A peace officer may, without a warrant, arrest for a breach of the peace or for a misdemeanor committed in his presence, but has no authority to arrest for a misdemeanor, on mere suspicion or at the request of another.

2. One at whose request a police officer makes an arrest for a misdemeanor, in the absence of evidence that the misdemeanor was committed in the presence of the officer, must, to justify himself, show that the charge leading to the arrest was well founded.

Appeal from the St. Louis Circuit Court, Adams, J.
*Affirmed*.

Marshall & Barclay, for the appellant : The petition does not state a cause of action. Regarding it as an action for false imprisonment, it does not allege want of reasonable or probable cause, and does not show that the arrest was unauthorized. — *Burns* v. *Erben*, 40 N. Y. 463 ; *Taaffe* v. *Kyne*, 9 Mo. App. 15 ; 111 Mass. 492 ; 2 Chitty's Pl. 600 ; *Larke* v. *Bande*, 4 Mo. App. 186. Regarding the case, on the other hand, as an action for malicious prosecution, the petition is defective in not stating that the arrest and prosecution were without probable cause. — *Cottrell* v. *Richmond*, 5 Mo. App. 588 ; *Casperon* v. *Sproule*, 39 Mo. 39.

( 507 )

And by also omitting the allegation that the same were malicious. — *Vansickle* v. *Brown*, 68 Mo. 627. The arrest was made by an officer having power to make it. Such being the case, the only complaint that could be maintained against one who directed or requested the officer thus to use the power given him by the law, would be on the ground of malicious prosecution. False imprisonment cannot be predicated on such facts. — *Taaffe* v. *Kyne*, 9 Mo. App. 15 ; *Henry* v. *Lowell*, 16 Barb. 268 ; *Burns* v. *Erben*, 1 Robt. 555 ; 40 N. Y. 462 ; 1 Waterman on Tres., sects. 307, 367 ; 106 Mass. 289 ; 4 E. D. Smith, 445.

A. R. TAYLOR, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case is as follows : —

" The plaintiff, M. E. Taaffe, complains of the defendant, Charles Slevin, and for cause of action states that on the seventh day of December, 1879, and for many years prior thereto, she was a resident of the city of St. Louis, Missouri, and enjoyed and possessed a good name and fame among the citizens of said city ; that on said day the defendant wickedly contriving to injure plaintiff, and to bring her into public scandal and infamy, and to oppress the plaintiff, did request, direct, and cause a police officer of the city of St. Louis, without any warrant or authority of law, to arrest the plaintiff while she was peaceably on Pine Street between Fourteenth and Fifteenth Streets, in said city, as she might lawfully be, and did request, direct, and cause said police officer to restrain plaintiff of liberty, and to carry plaintiff through the streets of said city under arrest from said point on Pine Street to the building on Clark Avenue, between Eleventh and Twelfth Streets, in said city, known as the " Four Courts ; " that said defendant did at the Four Courts make a charge against the plaintiff, and did request the police officer to incarcerate the plaintiff, which said police officer did refuse to do, and thereupon the plain-

tiff was discharged from said arrest, and said police officer did refuse to hold the plaintiff on said charge, and disregarded said charge. The plaintiff says that by reason of said arrest, and of being restrained of her liberty as aforesaid, and of being carried under arrest through the streets of the city as aforesaid, she has been greatly injured in her good name and fame; that she has thereby suffered great pain and anguish of mind, and shame and mortification, and has been damaged in the sum of $5,000, for which sum she asks judgment.''

The answer, after a general denial, proceeds as follows:

''And for further answer defendant states that, at the time stated in the petition as that of plaintiff's arrest, she was wilfully disturbing the peace of defendant and his family by loud and unusual noise, and by loud and offensive conversation; and further, she was disturbing the peace by noisy and disorderly conduct on the public streets of the city of St. Louis, and was at that time disturbing the peace of defendant and of his family, and of other persons, by violent, offensive, and obstreperous conduct, and by loud noise, and by unseemly and offensive language calculated to provoke a breach of the peace, all in the city of St. Louis, and while so engaged was arrested by a police officer of the city of St. Louis duly authorized by law to make arrests for such offence.''

It appeared from the evidence that plaintiff was an old family servant, having been for a period of twenty years in the service of different members of the Slevin family, by whom she was brought from Cincinnati to St. Louis; that defendant was the brother-in-law of Bernard Slevin, in whose family plaintiff had been a nurse for ten years; that Bernard Slevin had failed in business, and, at the time of his failure, owed plaintiff some money deposited by her with him, amounting, as she says, to about $3,000; that after his failure, Bernard Slevin lived in defendant's house; that plaintiff went, on many occasions, to defendant's house

to dun Bernard Slevin for money; that this became annoying to defendant's family, and that they brought policemen into the house on one occasion, and directed them to arrest her, which the policemen refused to do. Plaintiff says that both Bernard Slevin and defendant promised her repeatedly that if she would keep quiet about what Bernard Slevin owed her, it would be made right to her, and that defendant had promised her that he would see her righted. A short time before the occurrence which gave rise to this suit, plaintiff was informed that Bernard Slevin had made a conveyance of certain real estate to defendant's wife. On the Sunday after she heard this, she went to the church which defendant attended, and followed him, after church, to his house, asking him to convey to her some of this property in payment of what Bernard Slevin owed her. Defendant says that she then threatened to follow him the next Sunday in the same way. This is denied by plaintiff. Defendant, fearing such annoyance, applied, on Saturday, December 6th, at the police station for a policeman to protect him from annoyance if these solicitations were renewed at church on the next day. A policeman was detailed for this purpose. On the next Sunday plaintiff followed defendant out of church, to his house, about three blocks distant, and, when they arrived in front of defendant's house, she was arrested by the policeman at the request of defendant. She was taken to the station-house, and, defendant there refusing to prefer any charge against her, she was cautioned and discharged.

As to what passed on the Sunday of the arrest, the testimony is conflicting. Plaintiff testifies that she spoke in a low voice, without any vehemence of language or gesture; that she made merely an humble appeal to defendant on account of her long and faithful service in the family, her extreme need, her sickness and inability to help herself, his former promises, and the supposed fact that his wife had recently received a conveyance from Bernard Slevin, of

real estate, — that on these grounds, he would convey to her one lot of ground in satisfaction of what Bernard Slevin owed her, or, at least, assist her in some way. She is corroborated by one witness as to the quietness of her demeanor and the low tone in which she spoke. Other eye-witnesses say that her manner was violent and threatening, her voice loud, her language vile and insulting, that a crowd was collected by her conduct, and that the people across the way threw up their windows. Plaintiff herself testifies, that on the Sunday before, she had told defendant (speaking of the family) that she "would not keep their honor any longer;" that they had always told her that she would get her money; that she needed something, and they "needed to give her something;" that on the morning of the arrest she told defendant that she would tell everybody about their having her money. Defendant did not speak a word to her during the whole walk; and she addressed him in this manner three times.

At the close of plaintiff's case defendant asked an instruction in the nature of a demurrer to the evidence, which was refused.

The cause was submitted to the jury upon the following instructions, of which the first was given at the instance of plaintiff, and the other two at the instance of defendant: —

" 1. The court instructs the jury that if they believe from the evidence in this case, that on or about the seventh day of December, 1879, in the city of St. Louis, on Pine Street between Fourteenth and Fifteenth Streets, the defendant requested a police officer to arrest the plaintiff and to take her to prison, and that, in pursuance of said request, said police officer did arrest plaintiff, and take her to the police station at the Four Courts in said city, and that plaintiff was there discharged, before this suit was brought; and if the jury believe from the evidence that plaintiff was peaceably walking along Pine Street, and doing no unlawful act in view of the other instructions herewith given you,

at or prior to said arrest, then plaintiff is entitled to recover in this action such damages as the jury may believe from the evidence will compensate plaintiff for said wrongful arrest and imprisonment, including compensation for any pain or mental anguish that the jury may believe from the evidence plaintiff sustained by said arrest. And, in arriving at their verdict, the jury may, if they believe that defendant was actuated by malice in causing said arrest, in addition to the actual damages sustained by plaintiff by reason of said arrest and imprisonment, include also a sum by way of punishment to defendant, such as the jury, under all the evidence in the case, believe would be just ; but the verdict cannot exceed $5,000.

" 2. If the jury believe from the evidence that at the time of the arrest of plaintiff she was wilfully disturbing the peace of defendant by talking loudly to him on the public streets in the city of St. Louis in an offensive manner, so as to attract the attention of bystanders, and that while thus engaged she was arrested by a police officer of said city, then the jury will find for defendant.

" 3. The jury is instructed that a police officer of the city of St. Louis has power to arrest, without a warrant, any person who disturbs the peace of any other person in his (such officer's) presence, by loud and offensive conversation."

There was a verdict and judgment for plaintiff for $500.

The appellant contends that this is an action, either for false imprisonment, or for malicious prosecution. That, if it is an action for malicious prosecution, the verdict is without evidence to support it, and the judgment is not supported by the petition, because neither want of probable cause, nor malice, are either alleged or proved. That, if it is an action for false imprisonment, there can be no recovery, because, upon the undisputed facts in the case, the arrest was made by an officer having power to impose the re-

straint ; and when this is so, however arbitrary, unjust, and causeless the arrest may be, an action for false imprisonment will not lie.

The action seems to be an action for a false imprisonment, which is a trespass committed by one man against the person of another, by unlawfully arresting him and detaining him without legal authority. An action for false imprisonment cannot be maintained for an arrest made upon a sufficient warrant granted by a magistrate having jurisdiction, against the parties named in the writ, where the warrant is executed in the proper time and place. And, where a peace officer has reasonable cause to suspect that a felony has been committed, he may arrest the suspected person. He may also arrest, for a breach of the peace, committed within his view. *Willis* v. *Warren*, 17 How. Pr. 100.

But a peace officer has no common-law power to arrest without a warrant, on mere suspicion of a misdemeanor, although he may do so for a breach of the peace, or misdemeanor less than a felony, committed in his presence. *Bowditch* v. *Balchin*, 5 Exch. 580 ; *Griffin* v. *Colman*, 4 Hurl. & N. 264. If the plaintiff had, in the presence of the officer, committed a breach of the peace or other misdemeanor, and the officer had arrested her for that offence, it would have been a matter of indifference that defendant directed the officer to do what it was his duty to do without any such direction. But the evidence is conflicting as to whether any misdemeanor was committed at all within the presence and knowledge of the officer. It may be that the weight of the evidence is that plaintiff was guilty of a breach of the peace ; but that is a matter with which we are not concerned. It is enough that there was some evidence from which the jury might find that the plaintiff committed no breach of the peace. As to threats or offensive conversation, there is no evidence that the officer heard them, even if they were made. As to loud talk, plaintiff's witnesses

swear that she spoke in a low tone of voice. As to the gathering of a crowd, for all that appears, that may have been caused by the arrest itself, or by the action of the officer in approaching plaintiff when the parties came to a stand in front of defendant's house.

In the absence of evidence of a misdemeanor committed in the presence of the officer, defendant, to justify himself, was bound to show that the charge which led to the arrest was well founded. If he failed to do this, he was liable in an action in the nature of trespass for false imprisonment. A constable cannot arrest merely because he is told that a misdemeanor has been committed; and every one who takes part in an unlawful imprisonment acts at his peril. *Griffin* v. *Colman, supra.* If the arrest in this case had been made by the officer, of his own motion, then the case would have been within the ruling of this court in *Lark* v. *Bande* (4 Mo. App. 186). That there was testimony to that effect is no ground for reversing the judgment, if the case was properly put to the jury.

We think that the instructions given put the case to the jury fairly enough. Undoubtedly, there was abundant evidence to warrant a verdict for the defendant on the theory that plaintiff was arrested legally for a misdemeanor by a peace officer in whose presence the offence was committed. But there was also evidence which is sufficient to support the verdict which the jury actually found; and we cannot disturb the judgment merely because we may think that it was very much against the weight of the evidence. That was a matter for the trial court, which had the advantage of seeing the witnesses face to face, and hearing the testimony just as it was given.

We see no legal ground upon which we can reverse the judgment. It is therefore affirmed. Judge LEWIS is absent; Judge THOMPSON concurs.