OLIVER R. WEST, BY HIS GUARDIAN v. JAMES F. RUSSELL, JAMES B. DRAKE AND AMY B. THAYER.

*Fraud in obtaining conveyance—Incompetency—Inadequate consideration.*

The weakness of mind shown by vacillation, shiftlessness, improvidence, occasional despondency, and a religious hobby, does not in itself render one incompetent in any such sense as to make business dealings with him *prima facie* fraudulent.

On a bill to set aside a conveyance for inadequate consideration the fact that the land transferred had been held under a tax title only, is relevant; the purpose of the inquiry is to find out how the amount paid compares with the market value of the interest sold.

Appeal from Van Buren. Submitted January 12. Decided April 12.

BILL to set aside deeds and mortgages. Complainant appeals. Affirmed.

*Chandler Richards* for complainant.

*Harrison & Rowland* for defendants.

GRAVES, C. J. The complainant's bill being dismissed in the court below he brought this appeal. The facts necessary for an understanding of the case are not numerous.

On and prior to May 29, 1879, Oliver West held eighty acres in Van Buren county under a tax title, and forty acres adjoining under the original title. This last piece was derived from the United States under the grant of swamp land. The improvements were slight and poor. He likewise owned a trifling amount of personal property. The value did not exceed $100. The land was under a mortgage to Mr. Smiley for about $558. West was about forty-two years of age and unmarried, and his mother, an aged woman, was living with him at the time on the premises. The defendant Amy B. Thayer is a married sister residing in the neighborhood.

On the date first mentioned he gave the defendant Russell a bill of sale of the personal property, and also a deed of the land referred to. The last was made subject to the Smiley mortgage. The consideration for these transfers was an undertaking on the part of Russell to support West and his mother during their lives. It is denominated in the case a life lease, but it is impossible to ascertain what were its scope and conditions, because it seems to have been destroyed and neither Russell nor any one else assumes to explain its contents. It seems to have been a part of the understanding that Russell should construct a house on the premises and provide West and his mother certain rooms in it. Russell went into possession and proceeded to erect the house, using some portion of the old one in doing so.

About a month later and on the 28th of June West surrendered what is spoken of as a life lease and accepted instead a note from Russell to Mrs. Thayer for $500 payable in five years with annual interest at ten per cent. and accompanied by Russell's mortgage on the premises, and these papers with West's apparent assent were placed in Mrs. Thayer's possession. And it may be well to observe here that she has asserted no right in opposition to her brother and has placed the papers in the hands of complainant's counsel in order to render them subservient to her brother's interests.

In the course of a little more than another month and on the 6th of August, Russell gave a deed of the land to defendant Drake for the consideration of $1258. The items of this consideration were the Smiley and Russell mortgages, which by the terms of the deed were assumed by Drake, and $200 to be paid by Drake to Russell, and which Drake secured by mortgage on other property. Russell and Drake used the land and made certain improvements, the latter being valued by different witnesses at from $180 to $360. Drake paid $55.81 of interest on the Smiley mortgage and about $7 of taxes.

March 16, 1880, the probate court adjudged West incompetent to have the charge and management of his property

and appointed Mr. Overton guardian for him, and shortly after, this bill was filed for the rescission of the foregoing transfers and for an account of rents and profits.

Of the facts necessary to sustain the equity of this bill the first is that West's mind was in a wrong state when the transactions were carried on which are the subject of complaint; and granting this to be true it is next important to determine of what character the difficulty was. For this purpose we must depend on the testimony in the record, and judging from that it is obvious enough that there was no want of capacity which any court would consider as complete.

Taking all the circumstances given as far as they bear on West's situation and ability, and the most that can be said is that he was weak-minded and that his weakness showed itself in vacillation, shiftlessness, improvidence, occasional despondency and in a religious hobby, and that the effect was to fit him to be the dupe of any one disposed to take advantage of his weakness and speculate upon it. There was neither the kind of derangement, nor such deficiency of judgment, independently considered, as might render the dealing which occurred with him *prima facie* fraudulent; nor was there any circumstance which if coupled with his condition would give the least color for a bill to rescind, unless it was the amount of consideration; and hence the case depends on whether that was so inadequate as to imply that advantage was taken of his weakness to overreach and defraud him.

This portion of the case will justify only a few words. The ground was taken below and is still contended for that the fact that the eighty-acre lot was held under a tax title which has never been tested in court is irrelevant and not fit to be noticed in considering the value of West's conveyance and the adequacy of the price. This view is not correct. The immediate purpose of the inquiry is not to ascertain the abstract value of the land without reference to the right in it which is in controversy, but it is to find out how

the amount paid by Russell compared with the market value of the thing or right paid for, and the thing or right paid for was only such title and interest as West had. The extent and quality of his right were matters essential to a correct estimate of its value, and it would have been fallacious to have taken the judgment of witnesses on an assumption that the right and title were subject to no qualifications.

It is matter of common knowledge that the valuation of holdings of real estate is always more or less influenced by the nature of the title, and the evidence of complainant's witnesses on the subject of value shows how much importance they attached to the fact that West's right to the eighty acres was based on a tax title. In order to give the proper effect to the opinions of the witnesses on the value it is indispensable to include what they say about it on the taking into account the facts as they were in regard to West's right, and if that is done there is no material conflict between the different sets of witnesses on the subject.

The proved value of West's right, subject to the Smiley mortgage and prior to any improvements by either defendant, is from $1000 to $1200; and considering that the weight of opinion favors the smaller amount it is not unreasonable to divide the difference and call the value $1100. Deducting the encumbrance the clear interest of West was therefore $542. It is very difficult to ascertain what was the true value of the personal property which went with the land. It was not more than $100 and in view of all the testimony it was probably less, and not far from $75. Taking this view of it the value of what Russell obtained was $597, and the consideration secured to be paid with interest at ten per cent. was $500 or $97 less than the value. Is it a fair and just inference that this discrepancy was the fruit of fraudulent overreaching on the part of Russell? Is there such inadequacy of consideration as ought to imply naturally and reasonably that Russell took advantage of West's weakness and perpetrated a cheat upon him? These questions arise upon the testimony and they cannot be answered by suspicion or conjecture.

The difference between the value as limited by the evidence and the price actually allowed, is not a large one, even in the case of so small a transaction. The amount has been given without attempting to cut it down to the lowest sum which a rigid scrutiny of the evidence might permit and it is not to be assumed that it might not be reduced without doing violence to the record. But however this may be it is reasonable to make allowance for diversities of judgment. There is much room for variance in pricing such interests whether by buyers and sellers or by witnesses, and it is needless to go out of this record for illustration. It is impossible to say that a case of fraudulent inadequacy is proved. Whatever disparity there may have been there was no more, according to the evidence adduced, than might readily and properly be ascribed to the unlikeness of men's judgments.

As a consequence the decree must be affirmed with costs.

The other Justices concurred.