101 419
135 259

101 419
j157 1462
157 1469

C. SUMNER BURROUGHS v. WILLIAM H. EASTMAN, IM-
PLEADED WITH JOHN JOHNSON AND
WILLIAM J. HURLEY.

*Constitutional law—Arrest without warrant—Due process of law
—False imprisonment—Inconsistent verdict.*

1. The provision of the charter of the city of Grand Rapids which
   authorizes police officers to arrest without process all persons
   who shall, in the presence of the arresting officer, be engaged
   in the violation of any ordinance of the city, is constitutional.[1]

2. Where a superintendent of police directs a member of the police
   force to make an arrest without warrant, and, in a suit for
   false imprisonment brought against him and the officer making
   the arrest, a verdict is rendered in favor of such officer and
   against such superintendent, from which he appeals, his con-
   tention that the verdict against him should not be allowed to
   stand because of the inconsistency of the verdict should be
   overruled.

Error to Kent. (Adsit, J.) Argued January 22, 1894.
Decided July 10, 1894.

Case. Defendant Eastman brings error. Reversed. The
facts are stated in the majority opinion.

*Edwin F. Uhl,* for appellant.

*James E. McBride,* for plaintiff.

MONTGOMERY, J. This is an action for false imprison-
ment.

The plaintiff was, by defendant's directions, arrested
while engaged in giving a performance at a theater in the
city of Grand Rapids on Sunday evening. There existed

---

[1] As to right to arrest without a warrant, see note to *State v.
Hunter,* 8 L. R. A. 529.

an ordinance of the city of Grand Rapids relative to shows, which prohibited a person or company giving theatrical exhibitions on the first day of the week.

1. The charter[1] of the city provides that police officers, in addition to the power and authority possessed by them at common law and under the laws of the State in matters of a criminal nature, shall have the power to arrest without process all persons who shall, in the presence of the arresting officer, be engaged in the violation of any ordinance of the common council of the city, and that the police officer may detain such persons in custody until complaint can be made and process issue for their arrest and trial. It will be seen, therefore, that, so far as the legislative power can go, it has been exercised to authorize an arrest without warrant for an offense against the ordinances of the city which is committed in the presence of the officer. It is insisted, however, that the act which attempts to clothe the officer with this power is unconstitutional.

This Court has repeatedly held that, in the absence of any statutory power or authority, an officer cannot arrest without warrant except on suspicion of felony, or in case of an actual breach of the peace committed in the presence of the arresting officer. See *Way's Case,* 41 Mich. 304; *Davis v. Burgess,* 54 Id. 514; *Quinn v. Heisel,* 40 Id. 576; *People v. Johnson,* 86 Id. 175. But whether the Legislature may extend the right to the officer to arrest for other misdemeanors, not amounting to a breach of the peace, has not been directly passed upon, unless it be in the case of *Robison v. Miner,* 68 Mich. 549. In *People v. Johnson,* 86 Mich., at page 179, the subject is referred to, but, as the record was not in shape to present the question, it was left undecided.

---

[1] Charter, 1891, p. 60; Local Acts of 1885, p. 83.

In *Quinn v. Heisel*, 40 Mich. 577, Mr. Justice MARSTON said:

" We are not at present prepared to say that an ordinance of the city of Grand Rapids could authorize arrests without process in cases not justified by common-law principles."

But this statement in this case was mere *dictum*, and, if the *quaere* suggested had been answered in the negative, it would not necessarily follow that the Legislature of the State might not confer a power which the common council of the city, under the charter then in force, could not have conferred.

In *Robison v. Miner*, it must be conceded, language is employed which might be construed as prohibiting the power of arrest. The statute there under consideration was Act No. 313, Laws of 1887, which contained the peculiar provision that—

" Any person found in the act of violating any of the provisions of this section shall be deemed guilty of a breach of the peace, and punished accordingly, and the arrest therefor may be without process; and this punishment shall be taken to be in excess of all other manner of punishment in this act provided for a violation of the provisions of this section. All officers authorized to make arrests for a breach of the peace shall have like power to make arrests under the provisions of this section as in other cases of a breach of the peace."

These provisions are peculiar and incongruous. It seemed to have been an attempt on the part of the Legislature to confer the power of arrest by a process of first declaring that to be a breach of the peace which is not such in fact, and by further providing that a party might be punished for such breach of the peace in addition to and beyond the punishment provided by the same statute. The conclusion that these provisions could not be maintained, in view of the constitutional provision that no person shall be twice put in jeopardy for the same offense,

was undoubtedly correct. As was well said by Mr. Justice CAMPBELL, in rendering the opinion of the Court:

"This statute is practically, if carried out, a general warrant itself, directing all officers to visit houses and business places without other authority, and make searches and arrests, and close up places of business on their own well or ill founded notion that the law has been violated."

But, in the course of this opinion, Justice CAMPBELL used language which seems to favor the contention of plaintiff here, as follows:

"The Constitution prohibits interference with persons or property without due process of law. The proceedings under this statute are all highly penal, and treated expressly as criminal proceedings. The Constitution expressly prohibits the issue of warrants of search or seizure of persons or property except on a sworn showing, which, it has always been held, must be of facts on personal knowledge such as would establish the legal probability of the cause of complaint. If the Legislature could evade this by providing for seizures and searches without legal warrant, the provision would be useless."

As to the first provision of the Constitution referred to in the discussion, it means no more than that a person shall not be deprived of liberty except by the law of the land. As to the latter provision, namely, section 26 of article 6, which provides that "no warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation," we are constrained to say that this section is not susceptible of the construction which, by implication, is placed upon it in the opinion of Mr. Justice CAMPBELL. The same provision was considered by the supreme court of Alabama in the case of *Williams v. State*, 44 Ala. 43, and a contention that such provision prohibited an arrest without warrant was concisely disposed of as follows:

"The federal and state constitutions both provide that

no warrant shall issue to search any place, or to seize any person or thing, without probable cause, supported by oath or affirmation. As a warrant is the process upon which arrests are usually made, and it cannot be issued without oath, the corollary has been drawn that there can be no arrest without a warrant. The popular error on the subject is our excuse for the assertion of the truism that it is the issue of the warrant, without oath or affirmation, which is forbidden, and not the arrest without a warrant."

The statute under consideration in that case authorized an arrest by a policeman without a warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened, in his presence.

It may further be said that, if the constitutional provision last quoted is to be construed as might be implied from the language employed by Mr. Justice CAMPBELL, it would exclude all arrests without warrant. The right which existed at common law to arrest for offenses committed in the presence of the officer has been too often recognized since the adoption of our Constitution to be open to question. Mr. Justice CAMPBELL uses the further language:

" So far as arrests are concerned, a similar principle applies. Under our system we have repeatedly decided, in accordance with constitutional principles as construed everywhere, that no arrest can be made without warrant, except in cases of felony, or in cases of breaches of the peace committed in the presence of the arresting officer. This exception in cases of breaches of the peace has only been allowed by reason of the immediate danger to the safety of the community against crimes of violence, and it was confined, even in such cases, to instances where the violence was committed in the presence of the officer."

This language embodies a correct statement of the rule of common law, but, if it is sought to extend its application to a case where the Legislature has authorized the arrest without warrant for offenses, other than breaches of the peace, committed in the view of the arresting officer,

we do not find the contention supported by authority. In Bishop's Criminal Procedure (volume 1, § 184) it is said:

"The right of arrest by the officers of the peace is more or less enlarged by statutory regulations in the several states, as well as, of late, in England; or, if not enlarged, defined. A statute enlarging the right,—that is, in restraint of personal liberty,—is to be strictly construed. But statutes of this sort are generally held to be constitutional."

In *Roberts v. State,* 14 Mo. 138, the power of the municipality to provide by ordinance for the arrest of vagrants without warrant was sustained. The same ruling was made in the case of *Bryan v. Bates,* 15 Ill. 87, and *Main v. McCarty,* 15 Id. 441.

In Massachusetts the legislature has from time to time provided by statute for the arrest of persons guilty of a particular offense, including the offense of selling liquor contrary to law, and the offense of drunkenness, and the power of arrest without warrant for the commission of the offense has been repeatedly sustained. See *Jones v. Root,* 6 Gray, 435; *Mason v. Lothrop,* 7 Id. 354; *Com. v. Cheney,* 141 Mass. 102. See, also, *Davis v. American Soc.,* 75 N. Y. 362.

In *White v. Kent,* 11 Ohio St. 550, a statutory provision which conferred the right upon police officers to arrest without process for violations of the city ordinances not amounting to breaches of the peace was upheld. It was said:

"It is evident that many ordinances necessary for good order and general convenience, as well as for the preservation of morals and decency, would be almost nugatory if offenders could only be arrested upon warrant."

In *Davis v. American Soc., supra,* it was held that a statute authorizing an arrest, without process, of one guilty of cruelty to animals, was valid.

In *O'Connor v. Bucklin,* 59 N. H. 589, a statute

authorizing an officer, upon view of any crime or breach of the peace or offense against the police of towns, to arrest without warrant, was sustained.

In *State v. Cantieny*, 34 Minn. 1, a statute of the state authorizing any peace officer to arrest without warrant for a " public offense committed or attempted in his presence" was construed and upheld, and it was held that an arrest without warrant for such public offense was authorized, even if the offense did not amount to a breach of the peace. See *Wahl v. Walton*, 30 Minn. 506. See, also, *Beville v. State,* 16 Tex. App. 70; *Wiltse v. Holt*, 95 Ind. 469; *Taaffe v. Slevin*, 11 Mo. App. 507; *Smith v. Donelly*, 66 Ill. 464; *Scircle v. Neeves*, 47 Ind. 289; *Jacobs v. State*, 28 Tex. App. 79; *Butolph v. Blust*, 41 How. Pr. 481; *Ballard v. State*, 43 Ohio St. 340; 1 Dill. Mun. Corp. §§ 210, 211, 414, and cited in notes.

It will be seen that the question has arisen in many of our sister states, and the power to authorize arrest on view for offenses not amounting to breaches of the peace has been affirmed. Our attention has been called to no case, nor have we in our research found one, in which the contrary doctrine has been asserted. We think that, while the language in *Robison v. Miner* may furnish justification for the contention which is made by the plaintiff here, the language which we have referred to, bearing that construction, was not necessary to a determination of the question there involved, and should not be followed.

The right to arrest without warrant applies as well to felonies made so by statute after the adoption of the Constitution as to offenses which are felonies at the common law, and this without express legislation providing for such arrest. *Firestone v. Rice*, 71 Mich. 377. This holding is wholly inconsistent with the claim that what is due process of law must be determined by what arrest without warrant was permissible at the time of the adoption of the Consti-

tution. It is illogical to say that the Legislature may, by
defining a particular offense as a felony, or providing for
its punishment as such, authorize an arrest without war-
rant for such offense not committed in the presence of the
officer, and yet it may not by statute authorize arrest for
a misdemeanor committed in the presence of the officer.
The necessity may be as great in the one case as in the
other, and the case of *Firestone v. Rice* illustrates that
the rule is not irrevocably or inflexibly fixed by the state
of the law as it existed prior to the adoption of the Con-
stitution. The same provision of the Constitution which
protects the person protects the property from invasion
without due process of law, and yet statutes which have
prescribed what use of property shall constitute a nuisance,
and authorized its summary destruction when so used,
have been upheld by the courts (*Hart v. Mayor, etc.*, 9
Wend. 571; *Meeker v. Van Rensselaer*, 15 Id. 397; *American
Print Works v. Lawrence*, 21 N. J. Law, 248), and fully
approved by the Federal Supreme Court in the recent case
of *Lawton v. Steele*, 152 U. S. 133. . See, also, *People v.
Brooks, ante*, 98.

2. Appellant also contends that the verdict of the jury
finding the defendant guilty should not be allowed to
stand because of the inconsistency in the verdict rendered.
The actual arrest, which was made by the direction of the
defendant Eastman, was made by one Hurley, lieutenant
of police. Hurley was joined with defendant Eastman,
and upon the trial Eastman was found guilty, and Hurley
not guilty. It does not appear whether the plaintiff has
rested content with the verdict in favor of Hurley; but,
while it may be that the jury rendered an inconsistent
verdict, it does not follow that defendant Eastman can
take advantage of it. The plaintiff could have *nolle prose-
quied* the case as against Hurley at any stage, and have
proceeded to try the issue as against Eastman. The plaint-

iff might, after verdict, have moved for a new trial as against defendant Hurley, and a different result might be reached on another trial. We think the point should be overruled.

The circuit judge, however, erred in instructing the jury that the Legislature has not the power to authorize an arrest for an offense not amounting to a breach of the peace, without warrant, if committed in view of the officer.

For this reason, the judgment will be reversed, with costs, and a new trial ordered.

GRANT and HOOKER, JJ., concurred with MONTGOMERY, J.

McGRATH, C. J. (dissenting). I am not prepared to overrule the doctrine of *Robison v. Miner*, 68 Mich. 549. The statute under consideration in that case, as in the present case, empowered officers to arrest without process, and it was with reference to that provision that the language of Mr. Justice CAMPBELL, referred to by my Brother MONTGOMERY, was used, and there is no room for saying that that language was unnecessary to a determination of the question there involved. The evident intent of the Legislature in the provision under consideration was to bring the offense aimed at within the category of breaches of the peace, in order to subject it to the incidents of offenses of that class.

In *Allor v. Wayne Co. Auditors*, 43 Mich. 76, 97, Mr. Justice CAMPBELL says:

"The Constitution has also provided that no one shall be deprived of liberty without due process of law, and has provided that no warrant shall issue except upon oath or affirmation establishing probable cause. It has been settled for centuries, and the doctrine has been recognized here, that except in cases of reasonable belief of treason or felony, or breach of the peace committed in presence of an officer, there is no due process of law without a war-

rant issued by a court or magistrate upon a proper show-
ing or finding."

As was said by Mr. Justice COOLEY in *Weimer v. Bun-
bury,* 30 Mich. 201, 213:

"The Constitution makes no attempt to define such
process, but assumes that custom and law have already
settled what it is. Even in judicial proceedings, we do
not ascertain from the Constitution what is lawful process,
but we test their action by principles which were before
the Constitution, and the benefit of which we assume that
the Constitution was intended to perpetuate.    *    *    *
The bills of rights in the American constitutions have not
been drafted for the introduction of new law, but to secure
old principles against abrogation or violation. They are
conservatory instruments, rather than reformatory, and
they assume that the existing principles of the common
law are ample for the protection of individual rights,
when once incorporated in the fundamental law, and thus
secured against violation. We are, therefore, of necessity,
driven to an examination of the previous condition of
things, if we would understand the meaning of due process
of law, as the Constitution employs the term."

It may well be asked what principle was perpetuated or
secured against abrogation or violation, if what constitutes
due process of law is made to depend upon the will of the
Legislature as expressed in any one of our many and
varied municipal charters. If this constitutional provision
be not regarded as a limitation of the power of the Leg-
islature, then the statute is in each instance the test of
authority, and the constitutional provision is without
office or force. That provision is not necessary to sup-
port or protect the statute. The latter is to be construed
in subordination to the Constitution, and is to be tested
by that instrument. The term "due process of law" had
a well-settled meaning when the Constitution was adopted,
of which the framers of that instrument must be presumed
to have had knowledge, and with reference to which it
must be presumed that they acted. Subsequent legislation

cannot change the meaning or effect of a constitutional provision. A statute may provide for a removal from office, or for the taxation or taking of property, without notice or hearing; but, although such would be a process provided by law, it will not be contended that a removal or a taking thereunder would not be a plain violation of the Constitution. Such statutory process, when tested by principles which were before the Constitution, would be found to·lack essential requisites of due process. The Constitution nowhere in express terms speaks of notice or a day in court, but, notwithstanding, these are universally recognized as essential incidents of due process. In *Weimer Bunbury, supra,* Mr. Justice COOLEY subjected the process under consideration in that case to the test of settled rules which antedated the Constitution. Any other test would violate a cardinal rule of constitutional interpretation, subject·provisions designed for the protection of persons and ·property to legislative modification, and make the meaning of a term employed in the fundamental law, which term had, at the time of the adoption of the Constitution, a well-known signification, depend upon the language used in a municipal charter or ordinance.

The facts in many of the cases cited by my Brother MONTGOMERY bring the cases clearly within rules as laid down by this· Court.

In *State v. Cantieny,* 34 Minn. 1, respondent and his companions were intoxicated, noisy, and disorderly in the night-time, in a public street. An officer undertook to disperse them, and a scuffle ensued, during which an attempt was made to take away from the officer his baton. He undertook to arrest one of them, and was shot. Not only were the· parties guilty of a disturbance of public tranquillity, but of a breach of peace against the officer.

In *Beville v. State,* 16 Tex. App. 70, the party was

intoxicated in a public place, and in the act of committing a breach of the peace.

In *Wiltse v. Holt*, 95 Ind. 469, the officer, having knowledge that the appellee had previously threatened the life of one Bogart, and hearing a disturbance in Bogart's office, and seeing the appellee emerge from the office in an intoxicated condition, wild with excitement and anger, arrested him.

In *Bryan v. Bates*, 15 Ill. 87, it was held that the powers of cities and their ministerial officers were not changed by the *new* constitution. The arrest was of a person who was drunk, and was disturbing the peace by violent, tumultuous language, calculated to provoke a breach of the peace.

In *Scircle v. Neeves*, 47 Ind. 289, the party arrested was in the public streets in a state of gross intoxication, unable to walk or stand without support, and when found was prostrated upon the sidewalk, and was of course an actual obstruction to travel, a disgusting and offensive spectacle, and the situation was calculated to attract a curious crowd. *Com. v. Cheney*, 141 Mass. 102, was a case of like character.

In *O'Connor v. Bucklin*, 59 N. H. 589, the arrest was made under a statute providing that any officer, upon view of any crime or breach of the peace, or offense against the police, might arrest without warrant; but it does not appear just what the offense charged was. In *Wiltse v. Holt*, 95 Ind. 469, *Wahl v. Walton*, 30 Minn. 506, and *Taaffe v. Slevin*, 11 Mo. App. 507, there had been an actual breach of the peace.

Bouvier defines a breach of the peace as a violation of public order; an act of public indecorum. In *People v. Johnson*, 86 Mich. 175, a breach of the peace was defined as a violation of public order, a disturbance of the public

tranquillity, by any act or conduct inciting to violence, or tending to provoke or excite others to break the peace; and it was held that to be intoxicated and yelling on the public streets, in such a manner as to disturb the good order and tranquillity of the village, is an act of open violence, and a breach of the peace, which, if committed in the presence of an officer, will justify an arrest without warrant.    In *Davis v. Burgess*, 54 Mich. 514, it was held that the use of grossly indecent and profane language towards another upon the public street, and in the presence of others, is a breach of the peace.

In *White v. Kent*, 11 Ohio St. 550, the ordinance prohibited sales at auction in the public streets.    The court held that the care, supervision, and control of the streets were committed to the municipality; that it was the duty of the city to secure to the public the unobstructed use of the streets, and thus promote the order, comfort, and convenience of the inhabitants; and that whatever unnecessarily and unreasonably interfered with the primary and appropriate use of the street was a nuiaance.

The cases of *Jones v. Root*, 6 Gray, 435, and *Mason v. Lothrop*, 7 Id. 354, involve the precise question which was disposed of by this Court in *Robison v. Miner, supra*.

*Roberts v. State*, 14 Mo. 138, was an arrest for vagrancy, as defined by a municipal ordinance.    But that case is clearly opposed to *Way's Case*, 41 Mich. 299.    In that case, vagrancy was distinguished from disorderly conduct and breaches of the peace, and it was held that its statutory definition could not be enlarged by municipal ordinance.    And, with respect to the main question, Mr. Justice CAMPBELL says:

"It must not be forgotten that there can be no arrest without due process of law.    An arrest without warrant has never been lawful, except in those cases where the public security requires it; and this has only been recog-

nized in felony, and in breaches of the peace committed in presence of the officer. *Quinn v. Heisel*, 40 Mich. 576; *Drennan v. People*, 10 Id. 169. It could not have been contemplated—inasmuch as we are bound to suppose the Legislature intended .to respect constitutional safeguards— that the station-house sessions would have occasion to deal with many cases of misdemeanors, nor with any when an arrest could be safely postponed. The occasions which would justify arrest without process must be very rare indeed in cases of vagrancy; and, in a city no larger than Detroit, persons charged with disorderly conduct can very generally be dealt with more legally and justly in the regular way, inasmuch as very much of it involves no immediate danger to public or private security."

It seems to me that what is meant by the term "due process of law," as employed in the Constitution, is not only well settled by this Court, but that its signification has been arrived at by the proper recognition of a well-recognized rule of constitutional interpretation.

LONG, J., concurred with McGRATH, C. J.