## Pullman's Palace Car Co. v. Dennis Fielding.

1. Sleeping Car Companies—*Upper Berths—Duty of Servants.*—Giving a passenger an upper berth in a sleeping car, imposes upon the company the duty of providing reasonably safe means for him to get out of it.

2. Same—*Call Bells—Notice.*—A sleeping car company, by providing call bells for its berths, holds out notice that such bells will be responded to when rung by passengers occupying such berths.

3. Practice—*Dismissal as to a Co-defendant After Verdict.*—After the verdict, and pending a motion for a new trial, an amendment of the pleadings and a dismissal as to one of two defendants, with judgment against the other, is proper under section 24 of the practice act.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. Arthur H. Chetlain, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

Runnells & Burry, attorneys for appellant.

Kavanaugh & O'Donnell, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the Court.

The appellee was a passenger traveling in one of appellant's sleeping coaches from Kansas City, Missouri, to Streator, Illinois, on the Atchison, Topeka & Santa Fe Railroad, and while attempting to get down from an upper berth, in the night time, in order to answer to a call of nature, was thrown by a sudden lurch of the car and injured.

He brought suit against the appellant and the railroad company, and recovered a verdict against both for $8,000. Pending a motion for a new trial, the suit was discontinued as to the railroad company, and afterward appellant remitted the sum of $4,000 from the verdict, and judgment against the appellee was entered for $4,000.

This appeal is from that judgment.

The evidence tended to prove that appellee was tempora-

rily suffering from bowel troubles, occasioned by drinking water used by him while in Kansas, whence he was returning to his home, and that before retiring, but after he had vainly tried to secure a lower berth, which he testified was promised to him by the conductor of the sleeping car before he took passage, he explained the fact of his illness to both the conductor and the porter, and was assured that the porter would be on hand at all hours of the night to attend to him; that the porter showed him a knob which was in the upper berth that was assigned to him, and told him to ring the bell and either he or the conductor would give him all the attention he required.

Appellee then went to bed, and about the middle of the night was awakened by violent pains. He testified that wishing to get down from his berth, he rang the bell repeatedly, during a period of about ten minutes, but no response came; that the pain subsided, but that he continued to ring the bell at frequent intervals for fifteen or twenty more minutes, and during the last ten minutes, in which the pains began again and were violent, he rang almost continuously; that no. one coming, he asked the passenger in the berth beneath to open the curtains so he could get out; that the passenger did so, and he started to get down; that he held on to the railing above the berth, and was getting in shape to turn around so as to descend backwards, when the car lurched as if starting to go around a sharp curve, and came back with a sudden jerk, which loosened his hold and threw him out of the berth and across the passage-way, or aisle, and against the woodwork of the opposite berth, and to the floor. His face was bruised and cut, and he was ruptured in the groin. As to the ringing of the bell, he testified that he heard it ring, and he was corroborated by a fellow passenger, who testified that he was awakened once by the ringing of the bell, and was just dozing off again when appellee was thrown, but the ringing of the bell was denied by the conductor and the porter. It is not denied that he was thrown out by the movement of the car, nor but that he was hurt, as stated, except as to the rupture, and as to the

rupture it is denied, only by way of inference that it might have existed before the accident.

It is contended, however, that if anybody is liable for the injury, it is the railroad company, and not the appellant.

We need not consider who, other than the appellant, might be, or is, liable. It is enough for this case that the appellant is liable.

Just what ultimate limit may be reached with reference to the duties and obligations of a corporation engaged in business like that of appellant, need not be forecasted. That it owes a high degree of duty to persons whom it accepts as passengers for hire, and a duty having due relation to the accommodation it affords, does not seem to be a question. Nevin v. Pullman Palace Car Co., 106 Ill. 222.

And if it furnishes upper berths, which common observation and experience teaches are difficult, if not dangerous, to alight from when the car is in rapid motion, it is not carrying its obligation any too far to require it to have steps, as it usually does, or other mechanical contrivances, to assist in that act. And having steps it is necessary, if they are movable, as is the custom, that servants be employed to bring them to the aid of the passenger, and in the night time such servants should be alert and awake, ready to respond to the ring of the bell provided to call them. It is not alone the undertaking of such a company to provide the bed to sleep in, but also reasonably safe means of getting into and out of the bed.

That the appellee did all he could, under the circumstances, to call the porter or conductor to his aid, we think the evidence clearly shows, and that had one or both of them not been negligent in performing their duties, the accident would not have happened, does not seem to admit of doubt.

We do not place much stress upon whether or not the appellee notified the conductor before or after taking passage that he was ill, and needed a lower berth for convenience in getting out of.

Giving the appellee an upper berth, whether he was well or ill, imposed upon appellant the duty to appellee to pro-

vide reasonably safe means for him to get out of it.   See Blum v. Southern Pullman P. Car Co., 1 Flippin (U. S. Cir. Ct.) 500.

A well man, no less than a sick one, may need to get up in the night time.   The company, by providing bells for that purpose, held out a notice that the bells would be responded to when rung, whether the passenger be sick or well.

With our large docket we have not time to elaborate propositions, but barely sufficient to consider and state them.   We are satisfied, from the evidence, that the jury were justified in finding that the appellant was negligent in the performance of the duty it had undertaken, and that if no error of law was committed by the court, the judgment must stand.

It is insisted that it was error, after verdict, to discontinue the cause as to the railroad company, and hold the verdict as to appellant.

As long ago as Cogshall v. Beesley, 76 Ill. 445, it was decided that after verdict and pending a motion for a new trial, an amendment of the pleadings, and dismissal as to one of two defendants, and a judgment against the other, was proper, under Sec. 24 of the practice act; and that decision was approved in Tomlinson v. Earnshaw, 112 Ill. 311.

We will not stop to discuss the argument concerning the instructions.   No specific defect in any instruction is pointed out, and we see no substantial error in them.

The questions of fact were all before the jury under fair instructions, and we think the judgment should stand. Affirmed.