ROBINSON v. CHICAGO & ALTON RAILROAD CO.

1. RAILROADS—DEATH OF PASSENGER—EVIDENCE.

Where a passenger on a train which was lurching considerably was last seen alive going out of one car for the next one, a door of the vestibule between which was open, and he was afterwards found dead beside the track, the manner of his death is not mere conjecture, but it is a fair inference that he was thrown through the door by the lurching of the train.

2. SAME—JOINT TORT FEASORS—DIRECTING VERDICT—RES JUDICATA.

A railroad company sued jointly with the Pullman Company for the death of a passenger who was thrown through an open vestibule door between Pullman cars cannot complain because a verdict was directed for the Pullman Company; it not being concerned with whether that company was also liable to plaintiff, and the verdict and judgment not being conclusive as to its liability to the railroad company under the contract between them for the furnishing of the cars.

3. SAME—NEGLIGENCE—PASSAGE BETWEEN CARS.

A railroad company, having placed its dining car at the rear of a train, and invited its passengers to go to and from it, is

bound to provide them with a safe passage from one car to another, and cannot escape liability for its failure to do so by showing a contract with the Pullman Company to do it.

4. SAME--DEFECTIVE VESTIBULE DOOR.

Where an inspection before a train was made up would have shown defects in a vestibule door between Pullman cars, their presence, by which a passenger was killed, was negligence on the part of the railroad company.

5. SAME—OPEN DOOR.

The fact that a vestibule door on a fast moving train was open, owing to a defect, when it was intended to be closed, whereby a passenger was thrown through it, was negligence.

Error to Kent; Wolcott, J.   Submitted November 5, 1903.   (Docket No. 87.)   Decided December 22, 1903.

Case by Samuel Robinson, Jr., administrator of the estate of Samuel Robinson, Sr., deceased, against the Chicago & Alton Railroad Company and the Pullman Company, for negligently causing the death of plaintiff's intestate.   From a judgment for plaintiff against defendant railroad company alone, it brings error.   Affirmed.

Plaintiff recovered verdict and judgment for damages occasioned by the death of Samuel Robinson, Sr., while a passenger upon a train of the defendant railroad company, through the alleged negligence of said company.   The deceased left his home in Charlotte, Mich., July 2, 1900, to attend the Democratic National Convention at Kansas City, Mo.   The delegation to the convention from Michigan met in Chicago, having arranged with the defendant railroad company for a special train of sleeping cars to take them from Chicago to Kansas City on the night of July 2d. The train was made up of the engine, baggage car, five sleepers, and a dining car in the rear.   The cars, for convenience, are numbered from the front of the train, 1, 2, 3, 4, and 5.   The sleepers were owned by the defendant Pullman Company, the dining car by the defendant railroad company.

Mr. Robinson had a railroad ticket, and also a berth ticket in Pullman car No. 3. The train left Chicago at 11 o'clock, an hour late. After getting out of the city, it ran at a high rate of speed. Mr. Robinson and some others went to the dining car for refreshments about midnight, where they remained until after the train left Joliet. They then left the dining car for their respective sleepers, and Mr. Robinson and some others stopped for a short time near the forward end of car No. 4, to converse with friends. One of them passed through the vestibule into car No. 3, followed by Mr. Robinson. Another soon afterwards passed from No. 4 into No. 3, and inquired for Mr. Robinson, desiring to speak with him. He could not be found. The last time he was seen alive was when he passed out of the front door of car No. 4 to cross the vestibule into car No. 3. In doing so he fell from the car and was killed. His dead body was found the next morning lying on the east side of the track near a station named Mazona, lying between the side track and the main track, near a switch which the train had just passed over. The body, after striking the ground, rolled about 30 feet.

An investigation showed that the fastenings of the vestibule door, through which Mr. Robinson fell, were defective. The evidence on the part of the plaintiff showed that the slot which held the bar designed to keep the door closed was old and worn, and would not hold the bar in place, and that the spring and latches, also designed to keep the door closed, were broken and defective. There was evidence that the train swayed considerably in its movements, so that the passengers had to be careful to prevent being thrown down in passing through the cars, or from one car to another. The theory of the plaintiff is that Mr. Robinson was thrown through the open door of this vestibule. The Pullman Company was made a party as a joint tort feasor. At the close of the evidence the court directed a verdict for the Pullman Company, and left the question of negligence of the defendant railroad company to the jury. The following special questions

were submitted to the jury, and all answered in the affirmative:

"1. Were the vestibule sleeping cars on the train owned by the Pullman Company at that time?

"*A.* Yes.

"2. Were the latch and socket for the bar on one of the vestibule doors in the vestibule between cars Nos. 3 and 4 so broken and worn that the door would not and did not remain closed while the train was running?

"*A.* Yes.

"3. If so, did Samuel Robinson, the deceased, leave the train through that door by falling or being thrown through that door while the train was in motion, from the vestibule to the ground?

"*A.* Yes."

Two other special questions were requested by the defendant railroad company, which the court refused to submit:

"4. Did the conductor and porters, employés of the Pullman Company, use proper care to keep the doors of the vestibules, and particularly the door of the vestibule between cars Nos. 3 and 4, closed while the train was running?

"5. Was the injury caused by the negligence of the Pullman Company and its employés in not having the fastenings on the door of the vestibule between cars Nos. 3 and 4 in proper repair, and in not keeping that door closed while the train was running?"

*T. J. O'Brien* and *James H. Campbell*, for appellant.

*McKnight & McAllister*, for appellee Robinson.

*Burlingame, Belden & Orton*, for appellee Pullman Co.

Grant, J. (*after stating the facts*).  1. It is urged that the manner in which Mr. Robinson met his death is mere conjecture, and that, therefore, there can be no recovery. This position is untenable. It is a fair inference from the evidence adduced in behalf of the plaintiff that Mr. Robinson was thrown through the vestibule door.

He was seen to go out of car No. 4 for car No. 3, which he did not enter. The natural conclusion is that he either voluntarily jumped from the car through this door, or was thrown through it by the lurching of the train. There is nothing to indicate that he intended to commit suicide by jumping from the car.

2. It is next urged that the court erred in directing a verdict for the Pullman Company. This is not a question in which the defendant railroad company is interested. The verdict and judgment are not conclusive of the liability of the Pullman Company to the railroad company under the contract between them, by which the Pullman Company furnishes its cars to be run over the defendant's road. Private contracts between these two companies do not affect the rights of travelers. Plaintiff has not appealed from the decision against him and in favor of the Pullman Company. The sole question left for the jury was, Is the railroad company liable for the defects in the cars furnished by the Pullman Company to be used by the railroad company in transporting its passengers? If the defendant owed no duty to its passengers for defects in the cars of the Pullman Company, then the railroad company is not liable, and the verdict should be reversed. If, on the contrary, the railroad company, under its contract of carriage with its passengers, is liable for such defects, and cannot defend on the ground that, under a contract with the Pullman Company, the latter company furnished the cars, then the verdict must be sustained. The question is not whether a judgment could be maintained by the plaintiff against the Pullman Company, but whether it can be sustained against the railroad company. If the court had directed a verdict for the railroad company, and had left the question of the negligence of the Pullman Company in providing these cars for the use of passengers to the jury, the sole question would have been, Was the Pullman Company liable to a passenger for these defects in its own cars? Whether the Pullman Company is bound under its contract to indemnify the

railroad company is not involved in this litigation. In a suit by the latter company against the former, involving the liability of the former to the latter for the injury, the decision rendered by the court in this case is not *res adjudicata.* Upon that question no such issue is raised by the pleadings. *Warren* v. *Railroad Co.*, 163 Mass. 484 (40 N. E. 895); *Buffington* v. *Cook*, 35 Ala. 312 (73 Am. Dec. 491). Plaintiff might have brought suit against the railroad company alone, or might at any time have discontinued it against the Pullman Company. *Moreland* v. *Durocher*, 121 Mich. 398 (80 N. W. 284); *Burroughs* v. *Eastman*, 101 Mich. 419 (59 N. W. 817, 24 L. R. A. 859, 45 Am. St. Rep. 419).

It is unnecessary to determine the question of the liability of the Pullman Company to the plaintiff, and we refrain from discussing it. The deceased's contract of carriage was not made with the Pullman Company; it was made with the railroad company. He knew nothing of the contract relations between the two defendants. It is quite likely that he did not know that the cars were owned, controlled, and managed by a separate company. As to the deceased, therefore, the railroad company owed to him the duty to see that the cars which were run over its road were properly equipped, in good condition, and properly managed. It failed in this duty, and cannot evade it by showing that it had a contract with another company to do it. From the description of the defects, they evidently existed when these cars were placed by the defendant upon its tracks for the transportation of the deceased and others. Defendant placed its dining car at the rear of the train, and invited its passengers to go to and from it. It was therefore bound to provide them a safe passage from one car to another. *Pennsylvania Co.* v. *Roy*, 102 U. S. 451; *Dwinelle* v. *Railroad Co.*, 120 N. Y. 117 (24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611). See, also, *Robinson* v. *Benevolent Soc.*, 132 Mich. 695 (94 N. W. 211). It follows from what we have said that there was no error in refusing to submit special questions 4 and 5 to the jury.

3. It is, however, urged that, the accident causing this injury occurring in the State of Illinois, this case will be ruled by the *lex loci.* It is urged that the courts of that State have decided that the Pullman Company is liable; citing *Nevin* v. *Pullman Palace Car Co.*, 106 Ill. 222 (46 Am. Rep. 688); *Pullman Palace Car Co.* v. *Fielding*, 62 Ill. App. 577. In *Nevin* v. *Pullman Palace Car Co.* the plaintiff, a passenger, was refused a berth in a sleeping car of the defendant. In *Pullman Palace Car Co.* v. *Fielding* a passenger occupied an upper berth. Becoming ill in the night, he rang the bell for the porter, desiring to be assisted in descending from his berth. The porter did not respond. Plaintiff then attempted to get out of the berth alone, and by a lurching of the car was thrown and injured. It will be observed that in neither of these was there any defect in the cars provided or in the management. The railroad company had performed its duty towards the traveler in furnishing safe and suitable cars. The negligent acts complained of were solely those of the Pullman Palace Car Company's employés. Whether the railroad companies would have been liable as well if the parties had seen fit to sue them, on the ground that the companies had provided sleeping cars for the use of their passengers, was not determined in either of those cases. In *Pullman Palace Car Co.* v. *Fielding* suit was brought against both the railroad company and the Pullman Company, and a verdict rendered against both. Pending a motion for a new trial, the plaintiff discontinued his suit against the railroad company. Those cases decided simply that, under their facts, the Pullman Company was liable. They do not decide that the railroad company was not liable. Neither do they decide that the railroad company would not be liable to a passenger for defects in cars furnished by the former for the use of the latter in transporting its passengers. This contention, therefore, cannot be sustained.

4. Counsel contend that, if the fastenings of the door were defective, that was not of itself negligence, and that

negligence in these defects would consist of failure to repair within a reasonable time after the defects became known, or ought to have been known.    We think there is nothing in this record to show the application to this case of the rule here invoked.    It is evident that an inspection before the train was made up would at once have revealed the defective condition of the vestibule door.    It was the duty of the defendant to inspect its cars before the train was made up, and to see that they were in proper condition, so far as a reasonable inspection would demonstrate that condition.    This is not a case of defective highways, · where sufficient time must elapse between notice of the defective condition and the accident to permit proper repairs.

5. Error is assigned upon the refusal of the court to instruct the jury, as requested, that the fact that the vestibule door was open was not of itself negligence.    Counsel cite, in support of this proposition, *Ward* v. *Railway Co.*, 165 Ill. 462 (46 N. E. 365).    It will appear from an examination of that case that the failure to keep the doors closed was not one of the grounds of negligence.    The negligence charged was that the railway company, instead of stopping at the station which had been announced, stopped 300 feet before reaching it, whereupon the plaintiff, assuming that he was at the station, proceeded to get off.    The court said that:

"The statements as to obstructions, want of light, improper condition of the vestibule doors, etc., are merely matters explanatory of the manner in which the defendant [plaintiff] was thrown to the ground, and are only material provided it is sufficiently shown that he was justified in attempting to alight from the car at that place; that is to say, it was not, as a matter of law, the duty of the defendant to keep the doors of the vestibule closed, the vestibule lighted, the ground near the track at that particular place free from gravel and kept lighted, etc., as an independent proposition."

In the present case the train was running at a high rate of speed.    It was evidently intended that these doors

should be closed. It was owing to a defect that the one in question was not closed. Under these circumstances the defendant will not be permitted to say that it was not negligence to have the door open, when in fact it was intended to be closed, and passengers had a right to assume that it was. The conductor of the train testified:

"In my walks through the train I should see that these vestibule doors were closed. We have instructions to do that from the trainmaster and superintendent. These instructions are in writing."

Judgment affirmed.

MOORE, CARPENTER, and MONTGOMERY, JJ., concurred. HOOKER, C. J., did not sit.