**Margaret Cashin, Appellee, v. The Graham & Morton Transportation Company, Appellant.**

**Gen. No. 15,414.**

PERSONAL INJURIES—*when owner of steamship transportation line not liable.* The owner of a steamboat is not liable for personal injuries occasioned by a passenger seeking to get into an upper berth because of its failure to provide means for such ascent, it not appearing that any request for a ladder or for assistance was made or that there was any sudden movement of the boat which precipitated the injury complained of.

Appeal from the Circuit Court of Cook county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed with finding of fact. Opinion filed March 21, 1911.

**Statement by the Court.** The appellee, plaintiff below, brought suit against the Graham & Morton Transportation Company for injuries claimed to have been sustained in attempting to get into the upper berth in a stateroom, which she had rented from the

Transportation Company on a trip from St. Joseph, Michigan, to Chicago.

The declaration contains two counts. The first one sets out that the plaintiff "rented from the defendant, for a certain consideration in money, the use of a certain stateroom during said trip. In said stateroom were two berths, one above the other, known respectively as the upper and the lower berth, the former being about four feet above the latter and the latter about one foot from the floor of the room. And the defendant, by its servants, then and there showed the plaintiff and her mother to said stateroom, and unlocked the door thereof. And it became and was the duty of the defendant to then and there furnish the plaintiff some means or contrivance wherewith and whereby she could ascend to and descend from said upper berth. But this defendant negligently failed to do. And the plaintiff, after partially disrobing, preparatory to ascending into said upper berth, discovered that there was no means of getting into such berth, except by standing on the edge of the lower berth, grasping the edge of the upper berth with her hands, putting her leg over the edge of the upper berth, and then raising her body. This the plaintiff, in the exercise of due care and caution for her own safety, proceeded to do. Just as she had lifted herself up to a proper height to throw herself into the berth, being exhausted by the physical exertion, and while in the exercise of due care and caution for her own safety, her limbs gave way under the weight of her body, and she fell on the wooden edge of said upper berth, by reason whereof she was then and there seriously injured, and became and was sick, sore, lame and disordered," etc.

The second count is substantially the same as the first, except that it recites that it was the duty of the appellant to exercise "that high degree of diligence required of common carriers of passengers;" that it

"negligently failed to provide a chair or other accommodation for the plaintiff, reducing her to the necessity of either standing up during said trip or purchasing from the defendant the use of a stateroom or berth. And the plaintiff, to avoid standing, did, together with her mother, by whom she was accompanied, rent from the defendant, for a certain consideration in money, the use of a certain stateroom during said trip."

A general demurrer was filed to the declaration, and was overruled.

The plea of the general issue was then interposed and upon a trial before a court and jury appellee obtained a verdict, upon which a judgment was entered. The usual motions for a new trial and in arrest of judgment were made and overruled, exceptions being taken in due form.

The only witness testifying as to the manner in which the accident occurred was the plaintiff herself. She testified that on a Sunday afternoon in July, 1905, she and her mother were returning from St. Joseph on a boat of the defendant; that they went through the cabin and found no seats; that thereupon she procured at the purser's office a stateroom, to which she and her mother were conducted; that in the stateroom there were a stationary washbowl and stool and two berths, the lower berth being about eighteen inches above the floor, and the upper one three or four feet above the lower, and extended about two inches beyond the lower one; that she saw no stepladder or utensil of any kind to assist her in elevating herself from the floor to the top berth. Plaintiff further testified that although she did not see a ladder she did not ask any employe of the appellant to assist her or to furnish her with a ladder; that after her mother had lain down in the lower berth, she, appellee, without asking for assistance from any one, endeavored to climb into the upper berth; that in doing so she slipped, fell a few inches, and struck her right hip on

Cashin v. Graham & Morton Transportation Co., 160 Ill. App. 160.

the wooden edge of the berth; that this fall wrenched her hip, which made her sick and caused her great pain.

WOLSELEY & BARKER, for appellant; HENRY W. WOLSELEY, of counsel.

FRANK CROZIER, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

It is urged by the Transportation Company that this case should be reversed, because the evidence does not show any legal liability on the part of the appellant; because the evidence does not sustain the allegations of the declaration; because the evidence varies from the allegations in the declaration as to the manner of the appellee's injuries; because the court erred in refusing to give three instructions proffered by the appellant; because the court erred in refusing to give the jury a peremptory instruction to find the appellant not guilty; and in denying the motion in arrest of judgment.

In the view we take of the case, the refusal of the court to give the jury a peremptory instruction to find the defendant not guilty is the only one that needs to be considered. Reference to the foregoing statement will show that neither in the declaration filed in this suit, nor in the evidence offered to sustain the same, was there any allegation of any mismanagement of the boat or any specific negligence of any employe of the boat. The negligence complained of is that the Transportation Company did not furnish "some means or contrivance wherewith and whereby she could ascend to and descend from said upper berth." It cannot be said that this failure on the part of the Transportation Company was the proximate cause of the accident. The time was the evening. The boat arrived in Chicago at 10:30 P. M. Her mother retired in

the lower berth. The plaintiff did not ask any employe of the boat to furnish her with a ladder or other means of getting into the upper berth; she did not attempt to summon any attendant, and apparently did not even ask her mother to assist her in getting to the berth, but undertook to do so herself without assistance. It does not appear that there was any unusual motion of the boat, whether caused by the negligence of the Transportation Company or otherwise.

In our opinion the injuries were the result of a mere accident from which the plaintiff, if she had used proper care, could have shielded herself.

Our attention is called by the appellee to the case of the Pullman Palace Car Co. v. Fielding, 62 Ill. App. 577. This was a decision of this court rendered in February, 1896. Fielding was sick and returning to his home. He tried to secure a lower berth but was unable to do so. He was promised by the conductor of the sleeping car and by the porter that the porter would be at hand at all hours of the night to attend to him. The porter showed him how to ring the bell. About the middle of the night he was awakened by violent pains, and wishing to get down from his berth rang the bell repeatedly but no response came. After endeavoring for twenty-five or thirty minutes at intervals to get the assistance of the porter by ringing the bell, he undertook to get down alone, and as he was doing so the car lurched as if starting to go around a sharp curve, and came back with a sudden jerk, which loosened his hold and threw him out of the berth and across the passage-way, or aisle. The court held that it was the duty of a sleeping car company, which furnishes upper berths, to have steps or other mechanical contrivances to assist a person occupying such a berth to alight from it without danger when the car is in rapid motion, and if steps are furnished, which is usually the custom, that servants be employed to bring them to the aid of the passenger, and in the night time such servants should be awake and ready to

respond to the ring of the bell provided to call them. "It is not alone the undertaking of such company to provide a bed to sleep in, but also reasonably safe means of getting into and out of the bed."

This case goes as far as any we have been able to discover in holding sleeping car companies and vessel owners, who provide sleeping accommodations for passengers, to the duty of providing suitable means for passengers in getting into and alighting from upper berths. It may be and probably is the law that under such circumstances a ladder or steps should be furnished, and perhaps an attendant to assist the passengers.

In the case before us, however, there is no showing that the vessel did not have such ladders and steps. Nor is there any showing but that it would have furnished one of these contrivances to the plaintiff in this case if it had been requested to do so. We hold that it was the duty of the appellee when she found that there was no ladder in the room to demand of the officers or attendants upon the boat that one be furnished to her, and if she required assistance in getting into her berth that she should have asked that an attendant be sent to her.

We find neither in the declaration in the case nor in the evidence produced at the trial, any charge or proof of negligence of such a character as would render the defendant liable.

*Judgment reversed with finding of fact.*