RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JEFFREY BOYKIN; ADRIAN BOYKIN; JEFFREY
BOYKIN, JR., a minor; JENIECE BOYKIN, a minor,
                                    *Plaintiffs-Appellants,*

        *v.*

VAN BUREN TOWNSHIP; VAN BUREN TOWNSHIP
POLICE DEPARTMENT; DALE HARRISON; CHRIS
HAYES; MEIJER, INC.; GREGORY CHANEY; JASON
YOUMANS,

                                    *Defendants-Appellees.*

No. 06-1359

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72387—Victoria A. Roberts, District Judge.

Submitted: February 1, 2007

Decided and Filed: March 14, 2007

Before: MARTIN, COLE, and GILMAN, Circuit Judges.

---

## COUNSEL

---

**ON BRIEF:** Philip H. Seymour, COOPER, SHIFMAN, GABE, QUINN & SEYMOUR, Royal
Oak, Michigan, for Appellants. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO,
Livonia, Michigan, Jeffrey C. Gerish, PLUNKETT & COONEY, Bloomfield Hills, Michigan, for
Appellees.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Jeffrey Boykin appeals from the district
court's grant of summary judgment in favor of Defendants, alleging a violation of his constitutional
rights under 42 U.S.C. § 1983 and various state-law claims. Boykin was thought by private security
guards at a Meijer store to have shoplifted a drill that was on sale for five dollars. As it turns out,
the guards were mistaken; he had paid in full for the drill. Nevertheless, a call was placed to the Van
Buren Township Police Department, two of whose officers tracked Boykin down, arrested him at
his home, and hauled him in a squad car back to the Meijer store. Only after Boykin had suffered
this indignity did one of the Meijer guards finally talk to the cashier who had rung Boykin up and

check the receipts, at which point it became evident that they had been in error. Boykin was then released from custody, with apologies.

All this over a five dollar drill.

I

The majority of the relevant facts were recounted by the district court in its February 9, 2006 order:

> On April 12, 2004, Plaintiff went to the Meijer store in Belleville, Michigan. Plaintiff went through the checkout lane to purchase, among other things, a drill. At the register, he learned that the drill was only $5.00 and decided that he wanted two of them. The cashier rang him up for a second drill. He left the bag with his other purchases with the cashier and went back for the second drill. When he returned, the cashier was with another customer. So, Plaintiff says that he just picked up his bag after the cashier acknowledged him with a nod, placed the second drill inside, and left the store.
>
> Meijer loss prevention officer Defendant George Chaney first observed Plaintiff when he went to pick up the second drill. He did not see that Plaintiff had gone through the checkout lane already. He saw Plaintiff take a drill from the shelf as a "quick selection," i.e., without checking the price or comparing it to anything else. Chaney says he was taught that quick selection is contrary to normal shopping behavior. After selecting the drill, Chaney says that he followed Plaintiff and saw him walk to an empty checkout lane, place the drill into a bag and leave the store. There is some dispute as to whether Chaney later reported that Plaintiff put the drill into an empty bag, or whether there were other items in the bag. Chaney says that he did not see where Plaintiff picked up the bag, because his view of Plaintiff was partially obstructed for two to three seconds by other customers.
>
> As Plaintiff walked through the empty checkout lane, Chaney called another loss prevention officer, Defendant Jason Youmans, to come to the area to assist Chaney in initiating a stop of Plaintiff. Meijer loss prevention policy requires that two employees be present when a suspected shoplifter is approached or detained. By the time Youmans arrived, however, Plaintiff was in his car. Neither Youmans nor Chaney approached Plaintiff because Meijer policy also prohibits employees from approaching a suspect once he is in his vehicle. So, Youmans called the [Van Buren Township Police Department] to report a retail fraud. He gave a description of: 1) Plaintiff; 2) his car; and 3) the license plate number.
>
> [] Officers Chris Hayes and Dale Harrison were dispatched to Meijer in response to Youman's call. While en route to Meijer, dispatch informed the officers that Meijer loss prevention reported that the suspect was fleeing from the location. The officers, through dispatch, obtained Plaintiff's address from the license plate number and diverted to his house.
>
> The officers arrived at Plaintiff's home in separate patrol cars. Officer Hayes was the investigating officer. Officer Harrison was the assisting officer. When Plaintiff came to the door, he declined to open it or come out, but he spoke with the officers through the door. The officers advised that they were investigating a retail fraud at Meijer and that Plaintiff was a suspect. One of the officers also contacted dispatch and asked that it contact Meijer to get a more detailed description (than a black male wearing a red sweatshirt) and to find out what Plaintiff allegedly took. Dispatch advised that Plaintiff was accused of taking a drill and provided another description. Either Chaney or Youmans described Plaintiff as a black male, 6' tall, with a medium build, wearing a red sweatshirt.

Officer Hayes asked that another call be placed to Meijer loss prevention to confirm that there was a "good retail fraud" and whether Meijer wanted Plaintiff to be taken into custody. Per Officer Hayes, a "good retail fraud" is one that meets Meijer's criteria. He also described it as one where loss prevention observes a suspect select merchandise, conceal it and leave or attempt to leave the store. After speaking with Chaney or Youmans again, dispatch advised Officer Hayes that there was a "good retail fraud," and indicated that Meijer requested that Plaintiff be taken into custody.

Plaintiff told the officers that he was calling a lawyer. Just before he opened the door, he instructed his wife to videotape subsequent events. When Plaintiff opened the door there was some discussion between Plaintiff and the officers. One of the officers told Plaintiff that he was being charged with retail fraud and that he had to accompany them. Plaintiff questioned the basis of the accusation. He maintained his innocence. One of the officers indicated that he did not know why Plaintiff was being accused but that they were going to go to Meijer to find out. Plaintiff indicated that he paid for his purchases at the cash register and asked that he be allowed to get the receipt from his garage. The officers declined to let him leave the front door, but agreed to wait while Plaintiff's wife looked for the receipt. In response to Plaintiff's request that he be allowed to retrieve his receipt, the officer told Plaintiff that Meijer had everything on video camera. Plaintiff stepped outside and was taken into custody and handcuffed.

Before leaving Plaintiff's house, the officers went with Plaintiff into the garage while his wife looked for the receipt. It is not clear from the videos when Plaintiff learned that he was alleged to have stolen a drill, but he repeatedly denied doing so while in the garage. Also while in the garage, one of the officers saw and picked up a Meijer bag and two drills. Plaintiff told him to bring the entire bag, the contents of which he said that he had just bought, and the two drills. Plaintiff's wife was unable to find the receipt and Plaintiff said that he did not know where it was. Plaintiff eventually told his wife to discontinue the search; he agreed to go with the officers. The officers took Plaintiff and the merchandise to the store.

At the store, Chaney and Youmans met Officer Hayes at the entrance. Chaney confirmed that Plaintiff was the suspect and described what he saw. Chaney and Youmans then left the area to prepare their reports. Officer Hayes prepared to take Plaintiff to the police station. However, after hearing the discussion between Chaney and Youmans and the police officers, Plaintiff says that it occurred to him why they thought he committed retail fraud. He then explained his actions at the register to Officer Hayes and asked that his story be confirmed with the cashier. Officer Hayes had dispatch call Chaney back to the front of the store. Per Chaney, both he and Youmans went back to the entrance. Officer Hayes says that he relayed Plaintiff's version of events and asked Chaney to talk to the cashier. Chaney went inside and checked the register journal for the lane Plaintiff said that he went through. Youmans talked to the cashier. Both confirmed that Plaintiff purchased the second drill.

Chaney apologized to Plaintiff. Officer Hayes removed Plaintiff's handcuffs, returned his merchandise, and also apologized. He advised Plaintiff that he was free to leave with his wife, who had arrived at the scene. At Plaintiff's request, however, Officer Hayes drove Plaintiff back to his house and released him there. Plaintiff said that he wanted the officer to take him back home in the patrol car because of the embarrassment the incident caused him with his family and neighbors.

Plaintiff says that he did not tell the officers his version of events until they returned to the store because the officers were unable to explain what exactly Meijer claimed that he had done. Moreover, Plaintiff says that, contrary to Defendant Harrison's assertion that Plaintiff refused to explain, the officers cut him off every time he attempted to give an explanation.

After the incident, Chaney was cited for a training violation. He was advised by his supervisor, Carl Winekoff, that he was not supposed to call the police unless he first identified himself to the suspect. Chaney testified and Winekoff confirmed, however, that Chaney was instructed by a prior supervisor that he could contact the police under the circumstances presented in this case. Mr. Winekoff said that he still issued the violation as a means of changing that policy. Another policy Mr. Winekoff testified about is that Meijer only contacts the police when it intends to prosecute. Winekoff and Chaney acknowledged that Meijer does not prosecute if the item is under $35.00 and the person does not have a criminal history with the store.

D. Ct. Op. at 2-6.

Boykin filed suit in federal court, alleging against Meijer and its two employees, Chaney and Youmans: (1) premises liability and negligent hiring; (2) false imprisonment; (3) defamation; and (4) violation of 42 U.S.C. § 1983. Boykin also made several allegations against Van Buren Township, Van Buren Police Department, and its two officers, Hayes and Harrison, claiming: (1) false arrest and imprisonment, and (2) violation of 42 U.S.C. § 1983. Finally, against *all* of the defendants, Boykin made the following allegations: (1) intentional infliction of emotional distress; (2) malicious prosecution; (3) abuse of process; (4) concert of action; (5) and civil conspiracy.[1] The Meijer and Van Buren Township defendants moved for summary judgment on all of Boykin's claims. All of these motions were granted by the district court in an order filed February 9, 2006.

II

In reviewing a district court's grant of summary judgment, "the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)).

## A. Boykin's Federal-Law Claims under 42 U.S.C. § 1983

### 1. Van Buren Township Defendants

The district court ruled that defendants Hayes and Harrison, the two Van Buren Township officers who arrested Boykin at his home, had not violated Boykin's constitutional rights because they had probable cause for his arrest. The district court explained its reasoning as follows:

Over a series of phone calls prior to Plaintiff's arrest, Chaney and Youmans, in their capacity as loss prevention officers at Meijer, relayed the essential facts to dispatch — that a person fitting Plaintiff's description and driving a car registered to his address left Meijer with a drill that he failed to pay for. When the source of the allegations and the claims made are considered, the information obtained by dispatch was unquestionably sufficient to establish the probability that a crime was committed. Importantly, the information received from dispatch was confirmed once the officers reached Plaintiff's home and spoke to him. Then, they were able to further determine that there was a probability that Plaintiff was the perpetrator. Plaintiff fit the physical description. And, during the course of their discussions with

---

[1]Boykin's wife, Adrian, and his two minor children also brought a separate action for loss of consortium and negligent infliction of emotional distress.

him, Plaintiff acknowledged that he was at Meijer and that he was in possession of a drill from Meijer. Prior to placing him under arrest, the officers were not obligated to presume the truth of or further investigate Plaintiff's insistence that he paid for the drill, since he was unable to produce a receipt to substantiate his claim. *See Crockett* [*v. Cumberland College*, 316 F.3d 571, 581 (6th Cir. 2003)] ("Once the officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect."); *Criss* [*v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)] ("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

D. Ct. Op. at 12.

Boykin argues on appeal that there was a lack of probable cause for his arrest, and thus the district court's ruling was in error. For the reasons aptly articulated by the district court, however, Boykin's argument is unavailing. Officers Hayes and Harrison received information that a "good retail fraud" had occurred at Meijer, and that a person fitting Boykin's description and driving Boykin's car had committed the offense. This information came from dispatch, who had spoken directly with security guards Chaney and Youmans. Once the officers arrived at Boykin's house and spoke with him, they confirmed, based on his own admissions and his inability to produce a receipt, that he was indeed the alleged perpetrator.

Whether it was reasonable for the *Meijer* defendants to conclude that a theft had actually occurred is of course a valid question, but this is a question that Meijer and its security guards must answer, as discussed in the ensuing section. The Van Buren Township police officers cannot be held liable—at least not on grounds of unconstitutionally arresting an individual without probable cause—for an error, assuming there was one, wholly attributable to Meijer employees. If the tip had lacked the indicia of reliability essential to support probable cause, then the officers would have violated the Fourth Amendment in arresting Boykin. *See Illinois v. Gates*, 462 U.S. 213, 233 (1983). But such is not the case here. The officers were relayed first-hand information about a suspected theft at a major local retail store. They presumably receive such calls with relative frequency, and there would have been no reason for them to doubt the veracity of the information they received, especially in light of the facts they were able to corroborate once they spoke with Boykin.

The district court was also correct in holding, in light of its finding that there was no constitutional violation committed by Officers Hayes or Harrison, that Boykin's claim of municipal liability "necessarily fails." D. Ct. Op. at 15; s*ee also Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."). Further, the district court was correct in ruling that under Michigan law, Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit. *See Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich.1997) (noting that a city police department is merely an agency of the city, and therefore is not a proper defendant in a § 1983 lawsuit).

In light of these considerations, we affirm the district court's dismissal of Boykin's § 1983 claims against all Van Buren Township defendants.[2]

---

[2] While dismissal of the Van Buren Defendants is appropriate here, the seeming inequity of this result inclines us to point out a Fourth Amendment theory under which Boykin would likely have had considerably more success, but which was inexplicably ignored, and therefore waived, by Boykin's counsel. Specifically, Boykin's Second Amended Complaint alleges that his arrest "at his home," Compl. at ¶ 21, and "against his will," Compl. at ¶ 38, was "in violation

## 2. Meijer Defendants

As to defendants Chaney, Youmans, and Meijer, Inc., the district court at first questioned whether, as private persons, they were properly state actors for purposes of § 1983. The district court did not think that these private defendants met any of the tests for private conduct attributable to the state. Yet because the Meijer defendants conceded state action, the court proceeded with an analysis of whether they had violated Boykin's constitutional rights, concluding that they had not.

"A § 1983 claim must satisfy two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). With this framework in mind, we need not inquire further—at least for § 1983 purposes—into the actions of Meijer or its defendant security guards, Chaney and Youmans, if they are not deemed to have acted "under color of state law," that is, if they are not deemed to be "state actors." *See also Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) ("Section § 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law."). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc); *accord Romanski*, 428 F.3d at 636.

The district court conducted a thorough analysis of the state-action issue and concluded in this instance that Chaney and Youmans were not state actors under any of the above tests. We decline to rehash the district court's reasoning on this matter, noting only that Boykin fails to direct us to any authority from this Circuit for the proposition that a private security guard,[3] who merely places a call to police that a suspected shoplifting has occurred, but in no way directly confronts the

---

of his right under the Fourth Amendment under the US Constitution, to be free from unreasonable arrest," Compl. at ¶ 49. This allegation was sufficient to state a claim that the *warrantless arrest at his home* was a violation of his Fourth Amendment rights. *See Payton v. New York*, 445 U.S. 573, 590 (1980) ("The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."); *see also United States v. Thomas*, 430 F.3d 274 (6th Cir. 2005).

Boykin submitted evidence to the district court, in the form of his videotape chronicling the arrest, to support this allegation. For example, the videotape reveals that during Boykin's encounter with the Van Buren Township police, Officer Hayes told Boykin: "I'm trying to avoid coming into your home and dragging you out of your home. . . . And we're going to do that if you don't listen to us." This strikes us as an unequivocal show of force by the police. Had the issue been briefed we would be inclined to find that this statement—along with several other, similarly coercive statements made by Officer Hayes but not recounted here—effected a constructive entry into Boykin's home, in direct violation of the *Payton* "proscription against warrantless arrests." *United States v. Saari*, 272 F.3d 804, 807 (6th Cir. 2001); *see also Thomas*, 430 F.3d at 277 (warning that police not "deploy overbearing tactics that essentially force the individual out of the home"). The officers' actions seem all the more unreasonable given that the gravamen of Boykin's "good retail fraud" was that he allegedly stole a $5 drill. There was no reason to believe that once he had returned to his house, he was likely to be a flight risk or danger to others, and thus there was ample time for the officers to obtain a proper warrant had they really deemed an arrest necessary under the circumstances. *See United States v. Morgan*, 743 F.2d 1158, 1164 (6th Cir. 1984) ("Police officers may not, in their zeal to arrest an individual, ignore the fourth amendment's warrant requirement merely because it is inconvenient.").

However, Boykin's counsel failed to argue the *Payton* warrantless arrest issue before the district court, and he again does not argue it on appeal. The issue is therefore waived. "Federal Rule of Appellate Procedure 28(a) requires that an appellant's brief include 'a statement of the issues presented for review,' and '[a]n argument' on each issue presented." *Ewolski v. City of Brunswick*, 287 F.3d 492, 516-17 (6th Cir. 2002) (quoting *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 153 (6th Cir. 1996)).

[3]While we refer generically to Chaney and Youmans as "private security guards" throughout this opinion, their official title at the Meijer store was "loss prevention store detective." Chaney Dep. at 15. This titular distinction has no bearing on the state-action analysis in the instant case, however.

suspect, can be deemed a state actor for purposes of § 1983. We also note that Boykin has not argued at any point in this litigation that Chaney and Youmans were "private security police officers" pursuant to M.C.L. §§ 338.1079-338.1080. *See Romanski*, 428 F.3d at 638 (distinguishing the common-law shopkeeper's privilege from the "plenary arrest power enjoyed by private security police officers licensed pursuant to M.C.L. § 338.1079"); *accord Durante v. Fairlane Town Center*, 201 F. App'x 338, 342 (6th Cir. 2006) (unpublished). For these reasons, any of Boykin's § 1983 claims against the Meijer defendants must necessarily fail.

## B. Boykin's State-Law Claims

### 1. *Van Buren Township Defendants — a) false arrest; b) false imprisonment; c) malicious prosecution; d) intentional infliction of emotional distress.*

As discussed previously, we agree with the district court that Officers Hayes and Harrison had probable cause to arrest Boykin. And because all of Boykin's state-law claims against the Van Buren Township defendants are "premised on a lack of probable cause," D. Ct. Op. at 23-25, we agree that they must fail. For example, under Michigan law, a false arrest or imprisonment is an arrest or imprisonment "without legal justification," i.e., without probable cause. *Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 901 (Mich. 1982). The elements of a cause of action for malicious prosecution require, among other things, an "absence of probable cause for the criminal proceeding." *Rivers v. Ex-Cell-O Corp.*, 300 N.W.2d 420, 424 (Mich. Ct. App. 1981). And a viable intentional-infliction-of-emotional-distress claim requires a showing of "extreme and outrageous" conduct. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). In the context of an arrest made by police *with* probable cause, such a showing would seem very difficult absent additional allegations of outrageous behavior not made here. *See, e.g.*, *supra* note 2.

### 2. *Meijer Defendants — a) false arrest; b) malicious prosecution; c) intentional infliction of emotional distress; d) negligent hiring, training, and supervision.*

Even though the district court opined that the Meijer defendants were not state actors for § 1983 purposes, it nevertheless considered whether Chaney and Youmans had probable cause to set in motion Boykin's arrest. Importantly, the Chaney/Youmans probable cause determination, which was based on Chaney's observations of Boykin in the store, is completely distinct from the Hayes/Harrison probable cause determination, which was based on the reliability of the "tip" received from Chaney and subsequent confirmation of relevant details. As to this former probable cause determination, the district court reasoned as follows:

> Chaney saw Plaintiff pick up a drill, walk through an unattended lane, put the drill in a bag without paying and leave. Probable cause must be assessed based on the facts and circumstances known to Chaney at the time he took action against Plaintiff. The information known to Chaney when he asked Youmans to call the police *indisputably* suggested that the drill was stolen.

D. Ct. Op. at 21 (citation omitted and emphasis added).

Boykin contends that Chaney should not have rushed to judgment and placed a call—first to his partner, Youmans, and then to the Van Buren Police Department—without further investigation, based on two important observations: (1) Chaney saw Boykin place the drill into a bag with other items, and (2) Chaney saw Boykin take this bag from an open lane attended by a cashier. The district court rejected Boykin's first argument, noting that "it is immaterial for probable cause purposes whether or not there were other items in the bag." *Id*. at 22. As to the second argument, the district court reasoned as follows:

[C]ontrary to Plaintiff's suggestion that Chaney saw from where Plaintiff retrieved the bag, Chaney testified that he did not see where Plaintiff got the bag, because his view of Plaintiff was partially obstructed for two or three seconds, during which time Plaintiff walked past a lane attended by a cashier to the empty lane through which he exited. *There is no evidence which suggests that Chaney was ever under the impression that Plaintiff had any contact with the cashier in the open lane.* Therefore, there is no merit to Plaintiff's assertion that he should have known to question the cashier.

*Id*. at 22 (emphasis added).

We disagree with the district court's interpretation of the record, and especially with its conclusion that there was "indisputable" evidence suggesting Boykin had stolen the drill. The critical pieces of evidence, it seems to us, are the deposition of Mr. Chaney, viewed in conjunction with the Meijer surveillance videotape, which captured Mr. Boykin's movements as he went through the closed checkout lane with the drill and then walked to the cashier at the adjacent open checkout lane to retrieve his bag. Relevant portions of Chaney's deposition are recounted below:

**A:** I didn't observe where he took the bag from.

**Q:** Okay. If you were in constant surveillance [of Boykin], how did you not see where he took the bag from?

**A:** There was approximately a two-second gap, two-three-second gap between the time he went through the lane and he walked towards the door.

**Q:** Okay. A gap in your observation?

**A:** Yes.

**Q:** Okay. How far away from him were you?

**A:** Approximately 20-30 feet maybe.

**Q:** Can you explain to me where the gap occurred?

**A:** It was just due to customers blocking my view. That was in the lane farther down closer towards me that was open.

[. . .]

**Q:** Okay. Could you still see his head?

**A:** Yes, I could.

[. . .]

**Q:** So do you think that — I guess what I'm asking is when you indicated to me today that, you know, your surveillance was broken and you weren't sure where he got the bag from, do you still maintain that you couldn't see him or do you think you just couldn't really remember today?

**A:** I couldn't see him.

**Q:** Okay. All right.

**A:** Well, I couldn't see his hands rather.

**Q:** You said —

**A:** I could —

**Q:** — you could see his head?

**A:** Yes.

**Q:** So you could basically see where he was at?

**A:** Yes. Correct.

Chaney Dep. at 31-32, 34, 71-72.

As Chaney's testimony reveals, he was fully aware that Boykin had moved through a closed checkout lane with drill in hand, then had walked to the end of an open checkout lane, from which he emerged, magically, with a bag (or bags) in hand. It is not entirely clear whether, when Boykin reemerged into Chaney's line of vision, he had already placed the drill in the bag, or whether he did so only as he was walking out of the store. But neither is it relevant to the probable cause inquiry. What is relevant, and very important, is that Chaney knew Boykin had proceeded with his allegedly stolen drill to the back end of an open checkout lane, which had a cashier present. Chaney testified that he could not see Boykin's *hands*. In other words, absent proof to the contrary we must believe that he was unable to ascertain exactly when or where Boykin picked up the bag. But Chaney admitted he could see Boykin's *head* throughout the entire incident, and if he could see Boykin's head, then a reasonable juror could conclude that he should also have been able to see that Boykin was standing immediately next to—in fact, facing and making eye contact with, for a period of time—the cashier in the open lane. This is confirmed by the Meijer surveillance videotape, which clearly shows Boykin approach the cashier and take his bag after she acknowledges him.

Chaney's deposition testimony and the Meijer in-store surveillance tape therefore undermine any "indisputable" conclusion that Chaney had probable cause to think Boykin had committed retail theft.[4] Contrary to what the district court ruled, there *is* evidence tending to show that Chaney should have been aware of Boykin's interaction with the cashier in the open lane. Chaney at the very least knew that Boykin had taken his drill to within a few feet of a cashier (certainly odd behavior for a shoplifter, when he could simply have avoided the cashier by walking straight out the closed checkout lane), and the videotape evidence would seem to indicate that if Chaney could see Boykin's head, there is no reason he could not also have seen the cashier's head right next to Boykin's.

---

[4] Both parties, as well as the district court, seem to use the terms "retail theft" and "retail fraud" interchangeably. The terms both refer to a person who has taken merchandise without paying for it, but "retail *theft*" would seem to indicate a classic shoplifting situation in which a suspect picks up an item in the store and then walks out without paying for it or speaking to anyone about it, whereas "retail *fraud*" would seem to imply some communication between a suspect and a store employee (for example, where a suspect attempts to get a cash refund for an item he never purchased in the first place). While we have focused primarily on the "theft" or "shoplifting" angle, the facts would seem to favor Boykin even more with respect to an alleged "fraud." For example, if Chaney actually suspected that Boykin had somehow defrauded the cashier by going over and talking to her, then it was incumbent on Chaney to follow up with that cashier and determine what sort of conversation had taken place between the two.

Consider a completely different scenario: A customer goes into a Meijer store to buy a carton of eggs. Let's say these are free-range, hormone-free, organically-raised eggs, and they cost $5, just like the drill in this case. As the cashier is scanning the customer's items, she realizes that one of the eggs is cracked, so she rings them up, but then directs the customer to get a new carton after he has paid. The customer pays, leaves the bags containing his other groceries on the counter by the cashier, and picks out an unbroken dozen. After quickly snatching the new carton, he walks through a closed checkout lane adjacent to the one where he paid (because the open lane is blocked by other customers and their shopping carts), comes around to where the cashier is standing, places his eggs in his waiting bags with the cashier's approval, and departs. This is not a bizarre hypothetical; it actually happens all the time. And yet under the district court's logic, no reasonable juror could find that the Meijer security guards lacked probable cause to detain (or effect the arrest of) the organic-egg patron. The law of probable cause cannot require such a result.

In sum, and in contrast to the district court, we find that there remains a genuine issue of material fact as to whether Chaney had probable cause to effect Boykin's arrest for shoplifting. We therefore reverse the district court on this point, and discuss the consequence of this reversal below.

III

Boykin's § 1983 claims against the Van Buren Township defendants were properly dismissed on probable cause grounds, *see* Part II-A-1, and his § 1983 claims against the Meijer defendants were properly dismissed because there was no state action, *see* Part II-A-2. We thus **AFFIRM** the district court's grant of summary judgment in favor of all defendants with respect to Boykin's § 1983 claims. We also **AFFIRM** the grant of summary judgment in favor of Van Buren Township defendants with respect to his state-law claims.

As for Boykin's state-law claims against the Meijer defendants, however, we **REVERSE** the district court's dismissal and **REMAND** for further consideration in light of this opinion. In particular, we find that a triable issue exists as to whether security guards Chaney and Youmans had probable cause to suspect Boykin of shoplifting. "We . . . leave to the district court to determine whether it is proper to exercise its discretion at this point to dismiss the state law claims without prejudice, now that no federal law claims remain and [we suspect] there is no diversity of citizenship." *Nails v. Riggs*, 195 F. App'x 303, 313 (6th Cir. 2006).