NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0673n.06

No. 10-3328

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Sep 14, 2011*

LEONARD GREEN, Clerk

THOMAS A. NERSWICK,

     Plaintiff-Appellant,

v.

CSX TRANSPORTATION, INC.; JIM DUGGER;
CHRIS MINGES

     Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

Before: DAUGHTREY, COOK, and KETHLEDGE, Circuit Judges

KETHLEDGE, Circuit Judge. Thomas Nerswick claims that Jim Dugger and Chris Minges,

two privately employed police officers of CSX Transporation, Inc., arrested him without probable

cause and then took too long to present him to a magistrate. The district court granted the

defendants' motion for summary judgment. Nerswick's evidence fails to raise a genuine issue of

material fact on his claims, so we affirm.

I.

We view the facts in the light most favorable to Nerswick. *Boykin v. Van Buren Township*,

479 F.3d 444, 449 (6th Cir. 2007).

On June 9, 2006, Nerswick was told that two large pieces of metal had fallen off a truck on the road outside his business. Nerswick removed the metal pieces from the road—"in the interests of traffic safety"—and then sold them to Garden Street Iron & Metals, a nearby recycling center, for $310.00.

Garden Street thereafter contacted a CSXT employee, R.W. Godbey, to report that it had purchased two aluminum pieces that appeared to be CSXT rerailers. (A rerailer is an aluminum device used by a railroad to place derailed cars back on the tracks.) Another CSXT employee, T.J. Grace, then contacted officers Dugger and Minges and reported that two rerailers had been stolen from the railroad and recently sold to Garden Street.

That same day, Dugger, Minges, and Godbey visited Garden Street. There, Godbey identified the rerailers as CSXT property. Dave Holbrook, the Garden Street employee who had purchased the rerailers from Nerswick, provided the officers with a copy of Nerswick's driver's license and showed them a video (without audio) of the transaction. According to Holbrook, he had suspected that the rerailers were railroad property, so he told Nerswick of that possibility and obtained a copy of Nerswick's identification before purchasing them. Holbrook also told the officers that Nerswick said that he had taken the aluminum "from a building he owned." (Dugger Decl. ¶ 12; Holbrook Decl.)

On June 12, 2006, the officers sought a warrant for Nerswick's arrest on a charge of receiving stolen property. To obtain the warrant, Dugger signed an affidavit stating that Nerswick had sold CSXT rerailers to Garden Street without the railroad's permission and that the same rerailers had been reported stolen by Grace. Dugger also submitted a criminal complaint to the Hamilton County

Municipal Court deputy clerk, stating that, based on witness statements and "personal observations of video tapes," Nerswick had sold CSXT property that Nerswick had reason to believe was stolen. (Nerswick Br. at 7.) The deputy clerk signed the warrant.

On June 13, 2006, Dugger and Minges met Nerswick and his brother James, an officer with the Ohio Department of Public Safety, outside Nerswick's office. Nerswick asserted his innocence, but the officers arrested him anyway and took him to the CSXT police building. There, they questioned Nerswick for more than two hours. Nerswick's brother was present throughout the questioning. Dugger and Minges then handcuffed Nerswick and transported him to the Hamilton County Justice Center.

The next day, a judge of the Hamilton County Municipal Court found sufficient probable cause to hold over Nerswick for a grand jury to consider the charge. On June 26, 2006, the grand jury declined to indict Nerswick. Nerswick then brought this lawsuit, raising claims under 42 U.S.C. § 1983 and various state-law torts.

## II.

We review de novo the district court's grant of summary judgment to the defendants. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010).

Nerswick's primary argument is that the officers arrested him without probable cause, in violation of the Fourth Amendment. "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment," unless the defendant intentionally misled the court or omitted "material information" in seeking the warrant. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677, 677 n.4 (6th Cir. 2005). Here, as privately

employed police officers, Dugger and Minges were vested by Ohio law with the powers of municipal policemen. *See* Ohio Rev. Code § 4973.18. It is undisputed that they arrested Nerswick pursuant to a facially valid warrant. Nerswick's claim is that the officers made false statements or material omissions in obtaining that warrant. His only evidence in support of that claim, however, is that in seeking the warrant, the officers swore they had "video tapes" (plural) supporting Nerswick's guilt, when in fact they had only a single tape of him selling the rerailers at Garden Street. (Nerswick Br. at 27.) But that discrepancy was not "material," since there is no reason to think it affected the deputy clerk's decision to issue the warrant. The district court was therefore correct to grant summary judgment on Nerswick's federal false-arrest and false-imprisonment claims.

Nerswick also presents a raft of state law claims—for false arrest, false imprisonment, malicious prosecution, and negligence—that turn on the underlying question of probable cause. Probable cause exists where an officer has "reasonably trustworthy information" that the suspect has committed a crime. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Nerswick contends that probable cause was absent here because the officers did not acquire written statements from various witnesses until after his arrest. But the relevant question is what the officers knew at the time of the arrest. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). At that time, the undisputed facts show that the officers had been told that the rerailers sold to Garden Street were the same ones that Grace had reported stolen. In addition, a Garden Street employee, Holbrook, had identified Nerswick as the seller of the rerailers and produced supporting documentary and video evidence. Moreover, Holbrook had told the officers that he informed

-4-

Nerswick that the rerailers might be railroad property, and that Nerswick gave a false answer when asked how he acquired them. This information was sufficient for the officers to believe that Nerswick had sold CSXT property knowing or with reason to know the property was stolen—the exact offense for which they obtained a warrant and arrested Nerswick.

Nerswick responds that the officers conducted a hasty investigation and failed to obtain corroborating evidence of his guilt. Once an officer obtains probable cause, however, he has no further obligation to continue the investigation and may instead pursue arrest of the suspect. *Crockett v. Cumberland College*, 316 F.3d 571, 581 (6th Cir. 2003). Moreover, this case is unlike those cited by Nerswick because Dugger and Minges had no substantial evidence of Nerswick's innocence at the time of his arrest. *Compare Gardenhire*, 205 F.3d at 315-16. Nerswick has therefore failed to raise a genuine issue of material fact as to his contention that the officers arrested him without probable cause.

Nerswick's remaining claim against the officers is that they failed to present him to a judicial officer promptly after his arrest. Section 2935.13 of the Ohio Revised Code states that "[u]pon the arrest of any person pursuant to a warrant, he shall forthwith be taken before the court or magistrate issuing the same[.]" Similarly, Ohio Criminal Rule 4(E)(1)(c)(iii) states that "[an] arrested person shall . . . be brought without unnecessary delay before a court of record therein, having jurisdiction over such an offense[.]"

Here, the record shows that, after arresting Nerswick, Dugger and Minges questioned him at the CSXT office for approximately two hours before transporting him to the Hamilton County Justice Center. Nerswick says that detention violated § 2935.13. As the district court correctly

noted, however, each of the cases cited by Nerswick involved a much greater delay between arrest and presentation than the one he experienced here. *See Shobe v. Seneca County Sheriff's Office*, No. 4:07 CV 1783, 2008 WL 440582 (N.D. Ohio Feb. 13, 2008) (seven days); *Leger v. Warren*, 57 N.E. 506 (Ohio 1900) (five days); *Sayre v. Chilcott*, No. 48802, 1985 WL 9011 (Ohio Ct. App. May 16, 1985) (six days). We see no basis to hold that the two-hour delay here was unlawful.

Nor has Nerswick created a genuine issue of material fact as to an alleged "ulterior motive" for the officers' investigation. Nerswick asserts that his brother James's affidavit demonstrates such a motive. But that affidavit merely states that the officers asked Nerswick how he obtained CSXT's rerailers. Those questions were legitimate. Thus, the officers are entitled to summary judgment on this claim.

Only Nerswick's claims against CSXT remain. Our determination that the officers did not violate Nerswick's constitutional rights defeats his § 1983 failure-to-train claim against CSXT. *See Boykin v. Van Buren Township*, 479 F.3d 444, 450 (6th Cir. 2007). Similarly, without a wrongful act by its agent, CSXT cannot be vicariously liable to Nerswick under state law. *See Comer v. Risko*, 833 N.E.2d 712, 716-17 (Ohio 2005). The district court was therefore correct to grant summary judgment to CSXT as well.

The district court's judgment is affirmed.