NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0392n.06

No. 13-4214

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RENITA GRIFFITH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEMBA FINANCIAL CREDIT UNION, INC.; | ) | |
| WAL-MART STORES, INC., #5815; TELECHECK | ) | |
| SERVICES, INC.; OHIO STATE HIGHWAY | ) | |
| PATROL; JOHN DOE, I, c/o Ohio State Highway | ) | ON APPEAL FROM THE |
| Patrol, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| Defendants | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| and | ) | |
| | ) | |
| CITY OF WHITEHALL; CITY OF WHITEHALL | ) | |
| POLICE DEPARTMENT; LOU SPEZIALETTI, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: ROGERS and KETHLEDGE, Circuit Judges; MALONEY, District Judge.[*]

KETHLEDGE, Circuit Judge. Officers arrested Renita Griffith for drawing upon someone else's checking account to purchase household goods from Wal-Mart. She spent three days in jail. But it was all a mistake: Wal-Mart's electronic scanner had incorrectly read the account number on Griffith's check. The City of Whitehall prosecutor dropped all charges against Griffith. She thereafter sued Detective Lou Spezialetti, the City of Whitehall, and its

---

[*] The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

police department under 42 U.S.C. § 1983, alleging primarily that Spezialetti lacked probable cause for arresting her. The district court granted the defendants' motion for summary judgment. We affirm.

I.

We view the facts in the light most favorable to Griffith. *Boykin v. Van Buren Township,* 479 F.3d 444, 449 (6th Cir. 2007).

On February 9, 2010, Griffith bought $141.67 worth of household goods from her local Wal-Mart. She paid by personal check, handing over her driver's license to the cashier for identification. The cashier verified her identification and scanned the check through the register's electronic check-reader. After the register accepted the check, Griffith signed an electronic-signature box to authorize the transaction. She then collected her items and left the store.

Due to an electronic error, Griffith's check withdrew funds from Christopher Ashby's checking account rather than her own. Griffith and Ashby each banked at Kemba Financial Credit Union. Their six-digit account numbers were identical except for the fourth digit: Griffith's was 8, Ashby's was 9.

Soon after, Ashby reported the $141.67 check to Kemba Financial as an unauthorized withdrawal. Kemba told Ashby that he had to file a police report before it could return the money to Ashby's account. Ashby did so. Whitehall Police assigned the investigation to Detective Lou Spezialleti.

Spezialetti went to Wal-Mart and obtained surveillance video of Griffith making the $141.67 purchase. He also obtained a copy of the receipt for the transaction, which included Griffith's signature and driver's-license number. Spezialetti cross-referenced that information

against the state law-enforcement database, and identified Griffith as the suspected thief. He then went to Griffith's last-known address, but she had moved.

Spezialetti concluded that there was probable cause to arrest Griffith for theft. He then filed a criminal complaint against Griffith with the Franklin County Municipal Court, which issued a warrant for her arrest.

About ten weeks later, an Ohio State Highway Patrol Officer arrested Griffith in front of her home at gunpoint. The officer transferred Griffith to Whitehall Police, who jailed her for three days before releasing her on bail.

After her release, Griffith went to Kemba Financial and spoke to Lenia Neff, a Kemba representative. Neff examined the Wal-Mart receipt and realized that the numbers for Griffith's and Ashby's accounts differed only by one digit. She also discovered that Griffith had sufficient funds in her account at the time of her purchase to pay for the transaction. Neff concluded that a scanning error had likely occurred. Neff explained as much to Spezialetti, who relayed the information to Whitehall's assistant prosecutor, who dropped the charges against Griffith.

Griffith sued Kemba Financial, Wal-Mart, the City of Whitehall, Whitehall Police, and Spezialetti, among other. She settled with some defendants and dismissed her claims against others, leaving only Whitehall, Whitehall Police, and Spezialetti in the suit. The district court granted their motion for summary judgment on the ground that Spezialetti was entitled to qualified immunity. This appeal followed.

II.

A.

We review de novo the district court's grant of summary judgment. *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012).

Griffith argues that her evidence creates a genuine issue as to whether Spezialetti violated her rights under the Fourth Amendment. Specifically, she contends that Spezialetti lacked probable cause to seek an arrest warrant for her. An officer has probable cause where there is "reasonably trustworthy information" that the suspect has committed a crime. *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000). And an officer is entitled to qualified immunity if he "could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time[.]" *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008) (internal quotations omitted).

To be entitled to qualified immunity, Spezialetti must have been able to reasonably believe that Griffith "knowingly" stole money from Ashby's checking account. Ohio Rev. Code § 2913.02. Spezialetti undisputedly knew the following: Ashby had filed a police report alleging that $141.67 was stolen from his checking account; the $141.67 had been withdrawn from Ashby's account through a purchase at Wal-Mart made by check; Wal-Mart security video showed that Griffith had made a purchase at precisely the time that the money was withdrawn from Ashby's account; and the receipt for the $141.67 purchase included Griffith's signature and driver's-license number. Those facts, standing alone, suffice to show that a reasonable officer could have believed that Griffith was the person who withdrew the money from Ashby's account. That withdrawal was illegal; and thus Spezialetti had probable cause to think that

Griffith had stolen money from Ashby's account. Spezialetti was therefore entitled to qualified immunity. *See Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).

Griffith offers four responses. First, she argues that the security video merely showed her buying groceries at the supermarket, not that she had intended to steal money from Ashby's account. But an officer may rely on "circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom." *See United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007). Spezialetti did so here, given that the receipt and video confirmed that Griffith had made a $141.67 purchase with funds from Ashby's checking account.

Second, Griffith argues that a variety of circumstances—that Griffith purchased everyday items; that she voluntarily gave the cashier her driver's license; and that she had no criminal history for the past 20 years—served to dissipate Spezialetti's probable cause to arrest her. Those circumstances, though mildly suggestive of Griffith's innocence, are simply not enough to preclude a reasonable officer from thinking he had probable cause to arrest Griffith. *See, e.g*, *Gardenhire*, 205 F.3d at 315-16.

Third, Griffith argues that, if Spezialetti had only conducted a more thorough investigation, he would have realized that she was innocent. Specifically, she says that Spezialetti should have contacted Kemba Financial himself, which would have revealed the mix-up. She also suggests that Spezialetti should have made a greater effort to track her down at her new address. But "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. Here, Spezialetti had probable cause after he obtained the security video and receipt from Wal-Mart, and thus had no further duty to investigate.

Finally, Griffith argues that the district court ignored evidence that created a genuine issue as to whether Spezialetti had probable cause to arrest her. Specifically, Griffith points out that her expert witness—a former detective—testified in his deposition that Spezialetti failed to meet minimal investigatory standards in this case. But taking that testimony as true would only prove that Spezialetti negligently investigated this case. And a showing of "mere negligence" is insufficient to defeat Spezialetti's entitlement to qualified immunity. *Id.* at 373.

In summary, although Spezialetti's investigation "certainly was no model of thoroughness[,]" the district court properly concluded that he was entitled to qualified immunity. *Id.* at 372.

### B.

Griffith also argues that genuine issues of material fact exist as to her claims against the City and its police department. *See generally Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978). To establish municipal liability under *Monell* in a case like this one, a plaintiff must point to "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013) (quotation marks and alterations omitted). Here, Griffith had no evidence of other mistaken arrests by Whitehall police officers. Thus, the district court correctly granted Whitehall's motion for summary judgment on Griffith's *Monell* claim.

The district court's judgment is affirmed.